## CAMPBELL v. NICHOLSON et al.

An action for a balance due on a written contract between certain physicians, as proprietors, of an infirmary, and a committee of an unincorporated association, by which the former undertook to "receive in their infirmary and to furnish medical treatment and all necessary medicaments and nurses to all persons who may be sent to the infirmary by the association, for a certain sum each day, the arrangement to continue in force for three years," is prescribed under arts. 3499, 3503 of the Civil Code. The debt due under such a contract is not comprehended within the exception contained in the last clauses of arts. 3500, 3503 of the Code.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge, J.* This is an action against *Nicholson, Gardiner* and *Waters*, on a written agreement signed by *Gardiner, Nicholson,* the plaintiff, and *J. M. Mackie.* By this contract *Nicholson* and *Gardiner,* describing themselves as "a committee appointed for that purpose by the New Orleans Samaritan Society," engaged *Campbell* and *Mackie,* then proprietors of the Circus Street Infirmary, to receive such patients as might be sent to their infirmary by the society, and to treat them in that establishment, for a compensation fixed by the agreement. In a previous action on this contract it was determined, that the credit was not given by *Campbell* and *Mackie* to the persons who signed the contract individually, but to the members of the Samaritan Society, whoever they might be. See 12 Rob. p. 428. The present action was instituted, in consequence of that decision, against *Nicholson, Gardiner* and *Waters,* as known members of the society. Their membership was admitted. *Waters* pleaded his discharge in bankruptcy. *Nicholson* and *Gardiner* answered, denying all the allegations in the petition. They averred that, if indebted at all to plaintiff, which they deny, that they are only indebted to him $13 15 each, as members of the Samaritan Society, which they allege to have been composed of a number of individuals, whose names are set forth. The sum of $13 15 is alleged to have been deposited in court; and they pray for dismissal of the suit with costs. The plaintiff, in a supplemental petition, prayed that the persons so named as members might be cited, and, if it should be proved by the defendants that they were members of the Samaritan Society, that judgment might be rendered against them for their proportions of the debt sued for.

*Nicholson* and *Gardiner* subsequently pleaded the prescriptions of one and three years. This exception was sustained, and the plaintiff appealed.

*Robinson,* for the appellant. As to the plea of prescription: It is contended that the claim is prescribed by arts. 3499, 3503 of the Civil Code. Art. 3499 declares that "the actions of innkeepers and such others, (in the french translation '*celle des hoteliers, aubergistes et traiteurs*"'), on account of lodging and board which they furnish, are prescribed by one year."

Art. 3503 is in these words: "The action for arrearages of rent-charge, annuities and alimony, or for the hire of moveables or immovables; that for the payment of money lent; for the salaries of overseers, clerks, secretaries and teachers of the sciences, for lessons by the year or quarter; that of physicians, surgeons and apothecaries, for visits, operations and medicines; that of parish judges, sheriffs, clerks and attorneys, for their fees and emoluments

are prescribed by three years, unless there be an account acknowledged, a note or bond given, or an action commenced before that time." The french translation of this article is: " L'action en paiement des arrérages de rentes perpétuelles ou viagères, etc.; celle des médecins, chirurgiens, apothécaires, pour leurs visites, opérations et médicaments, se prescrivent par trois ans, à moins qu'il n'y ait compte arrêté, billet, obligation, ou demande intentée en justice avant ce terme."

The judge below erred in considering the plaintiff's action prescribed, under these articles. It is only prescribed by ten years, under art. 3508. The claim of the proprietors of the Circus Street Infirmary, is certainly not that of inn-keepers—hôteliers, aubergistes, ou traiteurs, in the sense of art. 3499; nor is it that of " physicians, surgeons, or apothecaries, for visits, operations and medecines," within the meaning of art. 3503, which relates to physicians and apothecaries bills, for services rendered or medicines furnished, in ordinary practice, attested by no written evidence. This article is limited, both by its spirit and letter, to accounts for visits and operations performed by physicians, or surgeons, or medicines furnished by apothecaries; and relates evidently to such services as can only be legally rendered by licensed physicians or surgeons, or to such things as can only be sold by licensed apothecaries. But the contract sued on is one which might have been entered into by any individual who happened to be the proprietor of an infirmary, employing at a salary the necessary physicians, &c. But assuming that articles 3499 and 3503, either or both, would apply to the claim sued on under any circumstances, still the Code expressly declares that neither apply to an action on a written contract. Article 3500 provides that the prescription established by the preceding art. (3499) " ceases from the time when there has been an account acknowledged, a note or bond, or a suit instituted"—in the french text, "lorsqu'il y a eu compte arrêté, billet ou obligation, ou citation en justice." Art. 3503 declares that the actions enumerated in it, ''are prescribed by three years, unless there be an account acknowledged, a note or bond given, or an action commenced before that time." In the french text, "à moins qu'il n'y ait compte arrêté, billet, obligation, ou demande intentée en justice avant ce terme." The court of the first instance was of opinion that the " account acknowledged, note or bond"—" compte arrêté, billet ou obligation," necessary to take the claim out of this prescription *brevis temporis*, must be " a written acknowledgment after the debt becomes due—that a written contract before, can have no influence on it. This idea is unsupported either by the text of the Code, by reason, or authority. Pothier, Obligations, no. 711, in commenting on the prescriptions applicable to the claims of physicians, surgeons, &c., as established by the Ordinance of 1673, the language of which is identical with that of our Code, says: " Ces prescriptions de six mois et d'un an n'ont pas lieu, lorsque la créance est établie par quelque acte par écrit, soit par-devant notaire, soit sous signature privée; tels que sont une obligation du débiteur par acte par-devant notaire, ou une promesse sous signature privée, ou enfin un arrêté de compte au bas d'un mémoire qui contient les fournitures, ou sur le journal d'un marchand, arrêté et signé par le débiteur; c'est le sens de ces termes de l'article 9, du tit. 1, de l'Ordonnance de 1673: ' Voulons le contenu avoir lieu, si ce n'est qu'avant l'année et les six mois, il y eut un compte arrêté, cédule, obligation ou contrat.' En ce cas, la créance n'est sujette qu'a la prescription de trente ans." Troplong, Prescription, vol. 2, no. 943, in commenting on arts. 2271, 2272 of the Code Napoléon, from which arts. 3499, 3503 of our Code have been taken, says : " Elles ont pour but d'éteindre des actions qui ne sont fondées sur aucun titre écrit. (Bourjon, t. 2, p. 577. Rubrique de la section 4.) On a pensé que là où les conventions étaient verbales, et où le paiement se faisait d'habitude de la main à la main et sans retard, c'était se conformer à la marche ordinaire des choses que de supposer que l'obligation avait été acquittée après un certain temps. On a donc admis une presomption de-paiement qui sort du droit commun." Again, in commenting on the same article (no. 989), he says : " Il suit de là qu'aucune des prescriptions dont nous avons vu la nomenclature dans les articles 2271, 2272, n'aurait lieu si les parties avaient traité par écrit. Car la présomption de paiement sur laquelle elles reposent n'est admissible qu'autant que l'action personnelle qu'elles tendent à combattre, n'est fondée sur aucun titre. (Bourjon, t. 2, 410)." The prescriptions established by arts. 2271, 2272 of the Code Napoléon, says Duranton, vol. 21, no. 402, " sont spécialement fondées sur la présomption de paiement, présomption qui résulte du besoin ordinaire

CAMPBELL
*v.*
NICHOLSON.

ment pressant que les créanciers de cette classe ont d'être promptement payés, de l'habitude dans laquelle on est d'acquitter ces dettes sans un long retard, et même sans exiger de quittance, &c. ' Sunt introductæ,' dit Dumoulin dans son traité De Usuris, ' in favorem debitorum qui sine instrumento et testibus, ut fit, solverunt, et præcipue heredum eorum.' "

*H. D. Ogden*, for the defendants. The principle established by Troplong, in no. 989, is based on article 2274 of the Code Napoléon, which is the same as article 3500 of our Code. Article 3500 does not apply to article 3503, for it expressly says, "in the cases mentioned in the preceding article;" and, therefore, cannot be made to embrace the subsequent articles.

Admitting, for the sake of argument, that the authority cited is applicable to article 3499, how can it be ascertained what portion of the amount to be paid for each and every patient per diem, is due for board and lodging ? But the words, "si les parties avaient traité par écrit" mean, if the parties had made a written contract, full, explicit, and which could, of itself, have made proof of the debt, as if, for instance, the contract sued on was, to receive a given number of patients for a given time No. 989 cannot be made to extend to the present case, where the proof of the claim must unavoidably rest on parol evidence.

The action of physicians, surgeons, and apothecaries, for visits, operations, and medicines, is prescribed by three years. C. C. 3503

*A. N. Ogden*, on the same side.

The judgment of the court was pronounced by

ROST, J. This is an action against the defendants as members of the New Orleans Samaritan Society, for a balance of account due the plaintiff by the society, before its dissolution. The defendants, *Nicholson* and *Gardiner*, acting as a committee appointed for that purpose by the society, entered into an agreement in writing with *Drs. Mackie* and *Campbell*, then proprietors of an infirmary, by which the latter were to receive such patients as might be sent to them by the society, to board them, furnish them with medicines, and also medical and other attendance, for a compensation fixed by the agreement. The society sent a large number of sick to the infirmary, and subsequently dissolved itself, without paying the debt thus incurred. In an action against the members of the committee personally, the late Supreme Court held that the credit was not given to the persons who signed the contract, but to the members of the society, whoever they might be. 12 Rob. p. 28. The present action was instituted in consequence of that decision. The defendants pleaded the prescription of one year for the board, and that of three years for the medical services and the medicines furnished, under arts. 3499 and 3508 of the Civil Code. This exception having been sustained, the plaintiff appealed. It is proper to state that the plaintiff is now subrogated to the right of *Dr. Mackie*, under the contract.

The counsel for the appellant contends that, as the advances were made and the services rendered by his client under a previous written contract, the prescriptions pleaded do not affect his claim, and that he is clearly within the exception in the french text of arts. 3500 and 3503 of the Civil Code—" à moins qu'il n'y ait compte arrêté, billet, obligation, ou demande intentée en justice, avant ce terme." He has referred us to a french ordinance passed in the year 1673, making analogous dispositions, to arts. 2271, 2272 of the Napoléon Code, taken from that ordinance, and also to several french commentators who are of opinion that this class of prescriptions does not attach when the claim is based on a written title, either public or private. Pothier, Oblig. no. 711. Troplong, Presc. vol. 2, nos. 943, 989.

The argument assumes that the language of the french ordinance is identical with that of our Code, and in this lies the error. The words of the ordinance are: " Voulons le contenu avoir lieu, si ce n'est qu'avant l'année et les

six mois, il y eut un compte arrêté, cédule, obligation ou contrat." *Cédule*, in the jurisprudence of France, is the technical name of an act under private signature. *Obligation*, when opposed to *cédule*, means, in that jurisprudence, a notarial act. After these two words, the word *contrat* was surplusage, and was, on that account, omitted in the art. of the Nap. Code, which retained the words *cédule* and *obligation* without any change of meaning. There can be no difference of opinion as to the correctness of the views entertained by the french commentators on the text of their law. Rogron, Code Civil Expliqué, art. 2274 *notes*.

It may be that our law-givers imitated the french ordinance, but they surely did not copy it. The Code of 1808, page 488, art. 77, provided that those prescriptions should apply, "unless a settlement has taken place, a note given, or an action be pending before a court of justice;" thus manifestly changing the meaning of the word *obligation* in the french ordinance, from a notarial contract to a promissory note. It has been the unanimous opinion of the bench and the bar that these prescriptions attached in all cases, unless there had been an account acknowledged, a note given for the amount due, or a suit instituted to recover it. and the article cited will bear no other interpretation. In the case of *Depas* v. *Riez*, 2 Annual, p. 30, we had occasion to notice a similar change in the legal meaning of words, made by our Code, in the definition of donations *mortis causâ*.

The only alteration made in the article of the Code of 1808 by that of 1825, consists in the insertion of the words "*or bond*" after the word "*note*," so as to read : "it only ceases from the time when there has been an account acknowledged, a note or bond, or a suit instituted." The plaintiff can derive no benefit from this alteration : and the fact that these short prescriptions are extended by the new Code to loans of money and to all claims payable by the year, or at shorter regular periods, except interest, whether those claims rest or not on written contracts, is utterly inconsistent with the reasons given by the french commentators, in support of the distinction contended for. A note given for money lent, comes within the exception in the rule, and is subject only to the prescription provided for that class of instruments. But a written agreement for a loan of money, entered into before the loan was actually made, would not, as the plaintiff's counsel supposes, arrest the prescription of three years.

On the other ground taken by the appellant, that arts. 3499 and 3503 are not applicable to him, the judgment is clearly right. Those articles embrace all persons within their categories, who make it a business to give their labor, their art, or their supplies, for an adequate compensation, and with a view to profit.

We have reluctantly come to the conclusion that the judgment should be affirmed. The defendants have availed themselves of the indulgence of the plaintiff to defeat his just rights, thus leaving him the only real, though unwilling, Samaritan.

We cannot refrain from saying that, although the defendants are legally released, there is, in our opinion, a strong moral obligation to seek out the solvent members of the association, and raise a contribution for the payment of the plaintiff's claim. *Judgment affirmed.*