(36 South. 87.)

No. 14,633.

BRAUN v. WEILL.*

(Nov. 3, 1903.)

CONTRACT OF EMPLOYMENT—BREACH—DAMAGES.

1. In this case, a contract of employment having been terminated by reason of ill feeling between the parties, with fault on both sides, the conclusion reached by the court is that the employé should be allowed the amount actually earned by him, and that the demands of both parties for damages should be rejected.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Max Braun against David T. Weill. Judgment for plaintiff, and defendant appeals. Reversed.

---

*Rehearing denied March 14, 1904.

Kernan & Gowland, for appellant. Rufus Edward Foster, for appellee.

## Statement.

MONROE, J. Plaintiff claims damages for the alleged nonfulfillment of a contract, and the defendant, by way of reconvention, makes a similar demand. It appears from the evidence adduced that in 1898 the plaintiff, as general manager or agent at New Orleans of the Provident Savings Life Assurance Society of New York, employed the defendant to solicit insurance on commission, and that at the expiration of the year, November 15, 1899, a new contract was entered into, as follows, to wit:

"The said Max Braun * * * hereby appoints David T. Weill * * * as special agent to solicit insurance for the Provident * * * in the states of Louisiana & Mississippi, in such localities as the Provident * * * accepts business. The appointment is made on the following terms and conditions: * * * Max Braun * * * obligates himself to advance to the said Weill * * * $200 a month, for 12 months from the 15th day of November, 1899, to the 15th day of Nov., 1900. * * * Weill * * * agrees to write $120,000 life insurance business, in force on the regular plans of the Provident * * * (nonparticipating policies excepted) during said period of twelve months. * * * Weill * * * agrees that, in default of his furnishing * * * during said term * * * $120,000 accepted business, he will return $20 for each $1,000 of insurance, written and paid for, less than the sum agreed to be furnished, it being agreed that policies on the quarterly or semiannual plan, and not at the time in force, shall be computed and reckoned on the basis of the proportion of insurance to the amount of the premiums paid. The said * * * Weill * * * further agrees that in the event of his death * * * his estate shall be liable * * * for such balance, if any exists, on account of advances made to him, proportioned on the basis of said * * * Weill being credited with $20 on each $1,000 of business furnished and in force. It is further stipulated that, for all business secured by said * * * Weill * * * during the said * * * twelve months, ex-

ceeding in the aggregate $120,000, * * * the said Max Braun obligates himself to pay * * * commissions as below mentioned."

Then follow specifications as to commissions. The plaintiff alleges that he complied with this contract, but that the defendant willfully and maliciously violated the same, in that he failed to furnish the amount of insurance called for, and that he (plaintiff) has been thereby damaged in the sum of $1,000. He further alleges that he advanced $1,200 under said contract, which he is entitled to recover, and he prays judgment accordingly.

The defendant alleges that he complied with his obligations under said contract, and, up to the date of its violation by the plaintiff, had furnished insurance in excess of the amount called for; that, about three months after said contract had been made, the plaintiff showed an intention to violate it, by falsely representing that the company would withdraw from the state of Mississippi, and coercing the defendant into relinquishing that territory, and by neglecting and delaying to make advances as required by the defendant, and that on June 4, 1900, he refused payment of defendant's draft for $100, which amount was then due him. Defendant claims $2,950, viz., $1,200 as the amount of the monthly installments during the unexpired term of the contract, $500 as the amount of which he has been deprived by losing the state of Mississippi as a field of operations, $750 as the amount of compensation that he would have earned under the contract for business in excess of the $120,000, and $500 as exemplary damages; and he makes a further claim for money alleged to be due under the contract of 1898.

The evidence shows that in February, 1900, the plaintiff insisted upon the defendant's relinquishing the Mississippi territory, on the ground that the company had withdrawn or intended to withdraw therefrom, and this seems to have led to one or two altercations, followed by strained relations. In point of fact, it was optional with the plaintiff to have continued the business in Mississippi if he had chosen to pay the license, and, under his contract with the defendant, the latter had the right to expect that he would do so, at least so long as he (the defendant) was furnishing, from the whole territory allotted to him, an amount of business, in proportion to the time expired, as called for by the contract.

The defendant's irritation, resulting from his difference with the plaintiff on this subject, was thereafter, during February and March, aggravated by the plaintiff's delay in furnishing advances, and by his complaints and reprimands on account of the defendant's being in New Orleans, rather than in the country, the facts being that the defendant had furnished at that time more than half of the whole amount of business called for by the contract; that he needed the advances demanded by him for the support of his family and to pay his expenses in the business, and was fairly entitled to them; and that, under the contract, the plaintiff had no right to dictate to him at what time he should solicit in the country, and at what time in the city of New Orleans. Such being the state of affairs, the defendant thought it advisable to avoid personal contact with the plaintiff, and he therefore kept away from his office and communicated with him in writing; and the plaintiff complained of his conduct in that respect, and requested him to amend it. Finally, upon June 1, 1900, the defendant drew on the plaintiff for $100, an amount which was due him at that time, and the plaintiff refused payment of the draft, whereupon the defendant wrote an abusive letter, the purpose and effect of which was to sever their relations, and this was followed a couple of weeks later by a similar letter concerning the plaintiff to the company of which he was agent.

In the latter part of the year 1900, defendant being employed by the general agent of another insurance company, that officer had a conversation on the subject with the plaintiff, in which he asked the plaintiff whether he (the agent) had done wrong in employing Weill without consulting him (plaintiff), to which plaintiff replied, "No;" that Mr. Weill did not owe him anything—not a cent—and that he (the agent) had a perfect right to employ him.

On January 22, 1901, the counsel for defendant addressed a letter to the counsel for plaintiff, in which, inter alia, they say:

"We have seen Mr. Weill, and your proposition of settlement is respectfully declined. On behalf of Mr. D. T. Weill, we now respectfully make amicable demand on Mr.

Max Braun, General Agent of the Provident Savings Life Assurance Society, for the sum of $2,950, indemnification, or damages, arising out of the breach of contract. * * * We will wait for your answer until ten o'clock to-morrow morning. If we do not hear from you by that time suit will be instituted," etc.

To this letter they received no answer, but on the same day Braun filed suit in the First City Court, alleging the contract of November 15, 1899; further alleging that under that contract he had advanced Weill $27.50 in excess of the amount earned by him, as against which there was due to Weill a balance of $7.50 on the previous contract; and praying judgment condemning Weill to pay the difference, of $20, and to surrender a book and certain blanks said to have been delivered to him for the purposes of said contract of 1899. In his answer the defendant sets up the fact that he had notified the plaintiff of his intention to sue him for $2,950 damages, and alleges that plaintiff's purpose in filing suit in the justice's court was to forestall the litigation. The case was tried and submitted, and whilst it was under advisement the plaintiff's counsel consented to judgment of nonsuit, and thereupon, upon February 28, 1901, instituted the present action. The court a qua held that the defendant's claim for money due under the contract of 1898 could not be set up by way of reconvention, and, rejecting so much of the demand in reconvention as was considered properly before it, gave judgment in favor of the plaintiff for the sum of $10. The defendant has appealed, and the plaintiff has answered, praying that the judgment be amended.

### Opinion.

The course pursued by the plaintiff, in requiring the defendant to relinquish his right to operate in Mississippi, in subjecting him to the annoyance of having to make repeated demands for money that he needed and had the right to demand, and in adopting a tone of reprimand because of the defendant's presence at times in New Orleans, was unauthorized by the contract, and was irritating in the extreme. On the other hand, the defendant acquiesced in the demand for the relinquishment of the territory, and it is not certain that he lost anything thereby; and we are not prepared to say that the plaintiff was not within his legal rights in requiring the defendant, when in New Orleans, to transact his business in person, at the office of the company, rather than by correspondence, or that the plaintiff was in default in refusing to honor the draft for $100, since he had not agreed to make advances in that way. Both parties were therefore at fault, and by reason of the fault of both their relations became so strained that it was no longer agreeable for them to transact business together. It is quite certain that the plaintiff was willing, and perhaps anxious, that the defendant should withdraw from the contract, for, apart from his conduct which preceded that action, he subsequently approved of his employment elsewhere, and said that the defendant owed him nothing; and, later still, when the defendant was threatening to sue him, he brought an action against him in which he claimed a balance of $20 as due him under said contract, but made no complaint of the defendant's withdrawal therefrom. It is quite certain, also, that the defendant did withdraw from the contract of his own volition, albeit, after considerable provocation, if not legal justification, and that he was not discharged. He had at that time worked for the defendant for 6½ months, and had furnished business, which had been accepted, to the amount of $72,500, for which, upon the basis of the contract, he was entitled to $20 per thousand, or $1,450, and he had received in advance the sum of $1,200. In view of the facts stated, we are of the opinion that the plaintiff should take nothing by this suit, and that the defendant should recover $250; being the difference between the amount actually earned and the amount received by him.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the defendant, rejecting the demand of the plaintiff, and condemning said plaintiff to pay to said defendant, as plaintiff in reconvention, the sum of $250, with legal interest thereon from judicial demand until paid; that, with respect to so much of defendant's demand in reconvention as relates to money said to

be due under the contract of 1898, his rights be reserved; and that in all other respects said demand be rejected and dismissed; the plaintiff to pay all costs in both courts.