101 So.2d 689

Dr. Frank H. MAREK

v.

Dr. G. Gordon McHARDY et al.

No. 42937.

March 17, 1958.

Rehearing Denied April 21, 1958.

Carmouche, Martin & Lafleur, Lake Charles, for plaintiff-appellant.

Dufour, St. Paul, Levy & Marx, John St. Paul, Jr., New Orleans, for defendants-appellees.

McCALEB, Justice.

Plaintiff, a physician specializing in roentgenology, brought this suit to recover damages in the sum of $124,585.35, allegedly sustained as a consequence of defendants' breach of contract to give him a 10% interest in a partnership to be formed for the practice of medicine. Primarily, he prays for a specific performance of the partnership agreement which, for reasons hereinafter pointed out, could not be granted but the principal demand stated in the petition is for damages in the amount claimed and, as a second alternative, for recompense on a quantum meruit.

To plaintiff's original petition, defendants, who are Drs. G. Gordon McHardy and Donovan C. Browne, interposed numerous exceptions among which was an exception of no cause of action and a plea of liberative prescription. Plaintiff then filed a lengthy supplemental and amended petition with exhibits attached thereto and, after a hearing on defendants' objections, all exceptions were referred to the merits. However, the trial judge, believing the claim to be prescribed by the three-year prescription provided by Article 3538 of the Civil Code, sustained defendants' plea and dismissed the suit. Plaintiff has appealed and defendants, following two unsuccessful attempts to have the appeal dismissed (see Marek v. McHardy, 231 La. 505, 91 So.2d 773 and 233 La. 835, 98 So.2d 207), answered, reurging their exception of no cause of action and praying for an affirmance of the judgment below.

An examination of the original and supplemental petitions, in connection with three certain letters which exhibit the contract between the parties, reveals the following well-pleaded facts: Sometime prior to February 19, 1948, Doctors McHardy and Browne, who were engaged in the practice of medicine as partners, contemplated expansion of their organization by forming

a medical group to operate a clinic for the general practice of medicine. To this end, defendants acquired real estate to be used for the clinic and sought to obtain the services of various specialists to join them in their practice of internal medicine, the combined operation to be known as the "Browne-McHardy Medical Group".

During this time, plaintiff was practicing his specialty of radiology at the Mayo Clinic in Rochester, Minnesota. He was contacted by telephone by Dr. McHardy, who sought to enlist his services and have him join the planned group of physicians. Following this solicitation, Dr. McHardy wrote plaintiff a letter on February 19, 1948 in which he stated that he and Dr. Browne were forming a medical diagnostic group which was to include two other internists, a neuro-psychiatrist and a radiologist, who would have charge of the X-ray Department; that they were renovating the ground floor of the old Carol Hotel in New Orleans and would have a full complement of general X-ray equipment on hand; that they were desirous of having plaintiff take charge of this department and would pay him $8,000 per year for the first three years with a percentage interest at the beginning of the fourth year "which percentage in the business and equipment will have been purchased by the three years of service the individual has dedicated to the group". Plaintiff was requested by Dr. McHardy to give his reaction to this offer as early as possible. Following receipt of this letter, further telephonic conversations were had between plaintiff and Dr. McHardy, culminating in a letter written by the latter to plaintiff on March 23, 1948, stated to be a confirmatory letter "which we will each consider equivalent to a contract". The terms of this contract were that plaintiff was to join the Browne-McHardy Medical Group as a roentgenologist on October 1, 1948 and as a salaried member of the organization for 36 months, the yearly salary being $8,000 with the understanding that, at the end of each year, an evaluation of the financial structure of the organization would be reviewed to consider the possibility of an increase of the salary. It was further provided in the letter that "Beginning October 1, 1951, having completed thirty-six months of your contract with us as specified, it is agreed that thereafter you will be a participating partner to the extent of ten percent in all income, equipment and accounts payable to the Browne-McHardy Medical Group. This partnership agreement drawn up in the proper form will be completed on October 1, 1951 at which time it goes into effect". On March 27, 1948 plaintiff accepted the proposition in writing and stated in his letter that "My wife and I are looking forward to October when we will come home to New Orleans to live."

On October 1, 1948, plaintiff joined the group and remained in its service for some

34 months when, according to his allegations, he was informed by Dr. McHardy that the defendants had no intention of granting him a one-tenth interest in the medical enterprise on October 1, 1951 but that, instead, he would have to buy this interest from them. Plaintiff asserts that his expectancy of being made a partner constituted a material part of the consideration for the three years employment and that, except for this promise, he would not have worked at the salary paid by defendants.

The first question presented for consideration is defendants' plea of the three-year liberative prescription. The alleged breach occurred on August 10, 1951 and the suit was filed on March 9, 1955.

Article 3538 of the Civil Code provides a prescription of three years for various types of actions among which is "That of physicians, surgeons and apothecaries for visits, operations and medicines". Relying on this provision, defendants cite a line of cases[1] holding that claims for fees by physicians or attorneys, no matter against whom they are brought, whether the client or patient himself, his succession or some one or group who incurred the liability on his behalf, prescribe in three years. For example, in one of these decisions, Campbell v. Nicholson, 3 La.Ann. 458, it was held that an action for a balance due on a written contract between certain physicians, as proprietors of an infirmary, and a committee of an unincorporated association, under which the physicians undertook to furnish medical treatment and nursing care to all persons sent to the infirmary by the association for a certain sum each day, prescribed in three years under Article 3503 (now 3538) of the Civil Code, as the suit was for medical and nursing services rendered.

But none of these cases is apposite to the matter at hand. In each of them the bill for the services rendered by the physician or the attorney had not been paid and the suit was for the recovery of the bill. Here, plaintiff is not suing to recover the fees charged by the Browne-McHardy Group for the services he rendered to the patients of the clinic. On the contrary, his suit is one for damages sustained by defendants' breach of contract under which he claims the right to have participated in a partnership fund which resulted from the payment of the fees by the patients of the Browne-McHardy Clinic. The applicable prescription is not

1. Arbonneaux v. Letorey, 6 Rob. 456; Campbell v. Nicholson, 3 La.Ann. 458; Linton v. Herman, 5 La.Ann. 603; Taylor v. City of New Orleans, 41 La.Ann. 891, 6 So. 723; Paine v. Todd, 6 La.App. 528; Tennant v. Foundation Finance Co., La.App., 161 So. 791; Drs. Toler & Toler v. Munson, 184 La. 895, 168 So. 93; Succession of Meraux, La.App., 28 So.2d 300 and Gould v. Louisiana & Arkansas Ry. Co., 5 Cir., 203 F.2d 238.

three years but that of ten years provided by Article 3544 of the Civil Code in personal actions, ex contractu. The trial judge therefore erred in sustaining defendants' plea and it is now overruled.

We pass on to a consideration of the exception of no cause of action which was referred to the merits by the trial judge and which has been reurged by defendants in their answer to the appeal. This exception is founded on several legal propositions which will be hereinafter discussed.

■ At the outset, it is appropriate to point out that, although plaintiff initially prays for a specific performance of the partnership feature of the contract, it is plain from a consideration of the alleged facts and the nature of the obligation that the case is not one in which a specific performance could or should be ordered. Whereas, Article 1926 of the Civil Code provides that, on the breach of any obligation to do or not to do, the obligee is entitled to damages or, at his option, to a specific performance of the contract in cases which permit it, the following Article 1927 limits the remedy in ordinary cases of breach of contract, declaring that the party aggrieved is entitled only to damages unless this would be inadequate, in which instance specific performance may be granted if the defaulting party has the power of performing the contract. Manifestly, in a case like this involving personal

services coupled with a promise of the obligees to make the plaintiff their business partner, the court would not order the exceptional relief of a specific performance. See Snyder v. Wilder, 146 La. 811, 84 So. 104. Hence, plaintiff's remedy is for dissolution of the contract (see Articles 2046 and 2047 of the Civil Code) and for the damages (Articles 1926 and 1927) he has occasioned by defendants' breach. This relief he has prayed for and we think he would be entitled to it if he is able to sustain the well-pleaded allegations of his petitions.

■ Plaintiff has also demanded, as a second alternative, recovery on a quantum meruit. This claim is not tenable because plaintiff received compensation for the services he rendered prior to the time he severed his connection with defendants. Hence, unless he is able to sustain his claim for damages under the contract as a consequence of defendants' breach of their promise to give him a 10% interest in the partnership, which was to be formed following the completion of 36 months service at the clinic, he is without a cause of action.

■ Defendants contend that plaintiff states no cause of action for these alleged damages for a number of reasons. They specify, first, that the alleged promise for the formation of a partnership was too vague and indefinite to support its enforcement in that, among other things, no pro-

vision was made for the duration of the partnership.

We find no merit in this postulation. The contract evidenced by McHardy's letter of March 23, 1948 is clear and concise, constituting a valid working agreement supported by adequate consideration. The omitted details, which defendants assert were essential, were such matters as hours, days off, vacations, sick leave, retirement and plans depending on contingencies such as death or retirement of partners, all of which were susceptible of agreement or controlled by law without need for stipulation. In any case, subsequent failure to reach an agreement as to these details would not be destructive of the legal effectiveness of defendants' promise and bar an action by plaintiff for the damages he is able to prove he suffered as a consequence of the breach.

■ The next contention of defendants that their offer was never accepted by plaintiff is without basis in view of the letter of March 23, 1948 which denominates it as a contract. This letter contains succinct statements of a prior verbal understanding reached by the parties and the agreement was later placed in execution, apparently in good faith, when plaintiff came to New Orleans and took charge of defendants' radiology department.

We also find untenable defendants' next argument that the latter of March 23, 1948 was intended to be a contract only insofar as the three years employment was concerned and that the mention of the partnership was only by way of a proposal which would be negotiated after three years if both parties were still interested. The letter itself refutes this proposition as it states that "* * * having completed thirty-six months of your contract with us as specified, it is agreed that thereafter you will be a participating partner to the extent of ten percent * * *".

Defendants further contend that plaintiff is not entitled to damages because the petitions show that he is admittedly in default. They say that plaintiff was bound under the contract to complete his three years of employment in order to entitle him to a 10% interest in the partnership and yet, according to his own allegations, he left his employment on August 10, 1951, or before the end of the 36-month period. Closely connected with this contention is defendants' claim that they have not been put in default and their breach, if any, was merely passive.

Plaintiff alleges that the reason why he did not continue his performance for the full thirty-six months is that defendants informed him that they were not going to make him a partner in accordance with their promise and, therefore, it would have been vain and useless for him to continue to perform as the expectancy of being

made a partner constituted a material part of the consideration for his three years employment and that, except for this expectancy, he would not have agreed to work for the salary paid by defendants.

Thus, the allegations of plaintiff's petition present the question of whether or not a party to a commutative contract in Louisiana may discontinue his performance when the other party notifies him that the contract will be repudiated. In other words, is the doctrine of anticipatory repudiation entitled to recognition in this State? If so, then defendants' claim that they have not been placed in default has no substance as the alleged unjustified repudiation by defendants of their promise is to be regarded as an active violation, of their obligation rendering them amenable to damages from that moment without the necessity of being placed in default. See Articles 1931 and 1932 of the Civil Code.

■ Under the common law, a breach of a contract before the time of performance allows the injured party to sue for damages immediately. 12 Am.Jur. Verbo Contracts, Sections 391, 401; Williston on Contracts, Revised Edition, Section 1296, et seq., especially Section 1314; Restatement of the Law of Contracts, Section 318 and Corbin on Contracts, Section 959, et seq. It is generally recognized, however, that the repudiator may retract his repudiation unless the promisee, in relying on the repudiation,

has changed his position to such an extent that subsequent performance is impractical, in which case the injured party may, nevertheless, recover damages. Corbin, op. cit. Sections 977, 978. .

In Section 1337A of Williston on Contracts, Rev.Ed., it is said that "There seems no recognition of any doctrine of anticipatory breach in the civil law until within comparatively recent times." A reference is made to the views obtaining in France and also in Germany where there are certain variations. The conclusions of Mr. Williston are founded on the difference in the civil law system's first choice of remedy in actions ex contractu, it being observed that damages are the rule at common law and specific performance the exception, whereas the reverse is true of the civil law. See also comment "Anticipatory Repudiation in Louisiana", 7 Tulane L.Rev. 586.

■ While Mr. Williston may be correct that the civil law, as obtaining in France, accords a specific performance as its first choice of remedy, this is not the rule in Louisiana—for, as we have above pointed out, Article 1927 of the Civil Code plainly declares that the breach of an obligation to do or not to do entitles the party aggrieved in ordinary cases only to damages. See Article "The Implied Resolutory Condition for Non Performance of a Contract", 12 Tulane L.Rev. 376–400 and 509–533. It is only where damages would not

furnish adequate compensation and the defaulting party has the power of performing the contract, that specific performance will be allowed in the absence of a special statute authorizing this relief, such as Article 2462 of the Civil Code, as amended, dealing with an agreement to sell.[2]

■ On the other hand, Articles 2046 and 2047 of the Civil Code provide that in every commutative contract there is a resolutory condition to take effect if either party does not perform and, in cases where there is a willful breach, the contract is resolved only by suit in which the court may, in its discretion, allow a further time for performance. These Articles, we think, have no effect on Article 1927, declaring that damages are the rule and specific performance the exception, as this Article establishes the ordinary remedy accorded by law, whereas Articles 2046 and 2047

refer to the judicial discretion which may be exercised after a hearing where the defendant is pleading for a chance to perform.

■ From all of this we deduce that an anticipatory breach of contract is actionable in Louisiana. Whether the contract will be resolved depends upon the facts and circumstances of each particular case. Accepting as true the allegations of fact in the case at bar, we are of the opinion that plaintiff was legally justified in treating the contract breached when he was informed by defendants in August of 1951 that they would repudiate their promise to include him as a partner on October 1, 1951 and, therefore, he was not required to continue in their service until October 1st as a condition precedent to the assertion of a claim for damages.[3] The question of whether plaintiff's discontinuance of per-

---

2. It is to be noted that Article 1927 is not contained in the Code Napoleon and the jurisprudence construing the Article is that specific performance has never been favored in our law. See Pratt v. McCoy, 128 La. 570, 54 So. 1012 and the many authorities cited therein.

3. The authorities cited by defense counsel do not sustain their contention to the contrary.

In Mortmain v. Lefaux, 6 Mart.,O.S., 654, the plaintiff was the manager and editor of defendant's newspaper. Defendant insisted that plaintiff print a controversial editorial and plaintiff, rather than merely refusing to print an article, left his position. The Court held that the plaintiff had a right to reject the article and the defendant's insistence

did not warrant plaintiff's leaving his position.

In Payne v. James and Louis Trager, 42 La.Ann. 230, 7 So. 457, defendant lessees had allowed the premises to fall into disrepair contrary to the terms of the lease. Since the lease had expired, the lessees no longer had possession and were no longer in a position to perform. The Court held that the plaintiff need not have alleged a putting in default in order to state a cause of action.

In Braun v. Weill, 111 La. 973, 36 So. 87, the Court found that, because of the strained relations between employer and employee, these parties had mutually rescinded their agreement.

In Jones v. Smalley, 5 La. 28, plaintiff agreed to haul some horses down the Mississippi River and sued for damages

formance in August of 1951 deprived defendants of the right to retract their repudiation and perform the contract is a matter of defense and does not affect the cause of action stated by plaintiff. Obviously, this would be a matter of importance only if it is shown on the trial that defendants were willing to perform their promise on the due date.

■ Finally, defendants' argument that no contract came into being until the writing of a partnership agreement, is without merit for the reasons stated above. The letter of March 23, 1948 is a complete contract containing an executory promise of a 10% interest in the partnership. No new written agreements were absolutely essential to carry into effect the covenants contained therein.

The exception of no cause of action is not well taken and should have been overruled.

The judgment appealed from is reversed and the case remanded for further proceedings consistent with the views herein expressed.

when defendant shipped them by other means. The Court ruled against plaintiff on the grounds that he had not been ready and willing to perform up to the last moment. The Court so held, despite the fact that defendant had made the other arrangements well before the time for performance. Referring to the defendant's making the other contract of carriage, the Court said: "It shows an unwillingness merely on the part of the defendant to carry his contract into effect, not an impossibility for him to do so; and it is the latter which alone excuses the plaintiff from the nonperformance of his part." If the Court meant by this that a clear repudiation before the time of performance does not constitute a breach, it was mistaken. This, because the Court, in rejecting plaintiff's demands, acceded to his request, and purportedly decided the case under the common law, since the contract had been confected in Ohio.

Finally, defendants cite Shaughnessy v. D'Antoni, 5 Cir., 100 F.2d 422, 425. The opinion in this case is actually contrary to defendants' contentions. Shaughnessy had been employed by D'Antoni, who had not paid as agreed, whereupon Shaughnessy left and obtained employment elsewhere. The Court, in holding that plaintiff could only recover for time in actual employ, said: "If Shaughnessy had offered to serve and D'Antoni had refused to let him, or had otherwise expressed a repudiation of his obligation, there would have been an anticipatory breach of the obligation, but such a breach is not shown by silence."