**RINGEL & MEYER, INC.,**
**Plaintiff-Appellant,**

v.

**FALSTAFF BREWING**
**CORPORATION,**
**Defendant-Appellee.**

No. 73–3642.

United States Court of Appeals,
Fifth Circuit.

April 17, 1975.
Rehearing and Rehearing En Banc
Denied June 12, 1975.

James J. Morrison, Jr., New Orleans, La., for plaintiff-appellant.

Bruce A. North, Lawrence J. Molony, New Orleans, La., for defendant-appellee.

Before DYER, MORGAN and GEE, Circuit Judges.

GEE, Circuit Judge:

Ringel & Meyer, Inc. brought this diversity action against Falstaff Brewing Corporation for breach of a requirements contract involving the diecutting and delivery of 24/12 ounce fibre cartons. The trial court found that Falstaff began ordering die cut cartons from a competitor of Ringel & Meyer in May of 1969 in violation of the requirements contract. It also found that there was not sufficient evidence to establish that Ringel & Meyer itself had actively breached the contract prior to Falstaff's deviation, as Falstaff had contended. The trial court held, nevertheless, that, under the law of Louisiana, Falstaff's obvious nonadherence to its contractual commitment to Ringel & Meyer was excused by the latter's anticipatory breach. We reverse.

The trial court found that prior to Falstaff's placing orders with Ringel & Meyer's competitor it had learned that Ringel & Meyer was in financial straits. In March 1969, a garnishment of Ringel & Meyer funds in Falstaff's hands was instituted by a bank on its judgment of

$15,000. Several days later garnishment was filed on a judgment of $4,725. In early April, the electricity to Ringel & Meyer's plant was turned off for non-payment of the company's utility bill. After the electricity had been shut off, Ringel & Meyer kept its full work force on for a short time but then cut back until eventually only two employees remained. These were last paid for the period ending April 17. In addition, during the March/April period foreclosure of the mortgage on Ringel & Meyer's plant had commenced, and its bank account was depleted. Further, to prevent funds due Ringel & Meyer from being paid to its creditors under the garnishments, the company refrained from sending Falstaff invoices for cartons it had actually delivered. Hence, during March and April it had no income even from work it had actually performed. The trial court concluded that by mid-April Ringel & Meyer "had given every manifestation that it could not, and would no longer, perform its contract with Falstaff" by its "obvious incapability of performance."

■ There is no doubt that Louisiana has accepted the common-law concept of anticipatory breach of contract, at least insofar as it is not inconsistent with its Civil Code. Marek v. McHardy, 234 La. 841, 101 So.2d 689 (1958). In Louisiana, an anticipatory breach will serve as the basis for an action for damages against the party to a contract who has repudiated his obligation, Marek v. McHardy, *supra,* and, although we have found no Louisiana cases on the subject, there seems to be little doubt that such an anticipatory breach by repudiation could also be interposed as a defense to a claim by the repudiator. Beginning with these basic premises, both the opinion of the court below and Falstaff's brief press on into the mysteries of the Louisiana Civil Code and discuss such concepts as the difference between active and passive breaches, the necessity of putting in mora prior to a damages or dissolution

action based on a passive breach, and the lack of any such requirement when an antecedent breach (active or passive) is raised as a defense. Such discussions are interesting, but they beg the real issue presented, which is whether "obvious incapability of performance" because of financial distress is any kind of a breach—or at any rate anticipatory breach—of contract under Louisiana law. The trial court found it an anticipatory breach, but we disagree.

The concept of anticipatory breach is an alien engraftment upon Louisiana's essentially civil-law system. If its application is to be extended beyond the most basic form of the doctrine into areas of existing Louisiana jurisprudence, the task and policy choices entailed are of unusual delicacy and are, at all events, for Louisiana courts, not federal ones.

We have searched the reports and the Code but can find neither case nor article which indicates that Louisiana has yet recognized anything short of an outright, unequivocal repudiation such as that considered in Marek v. McHardy, *supra,* as constituting an anticipatory breach. Thus, we find the Louisiana law on anticipatory breach in a nascent state. Falstaff would have us transmute this babe with a touch into a full-grown adult. This we refuse to do. There are logical stopping places short of an extension of the doctrine to circumstances such as those of our case. So far as we know, no court, common-law or civil, has yet held that obvious incapability of performance due to financial difficulties constitutes anticipatory breach.[1] To the contrary, the general rule in the common-law states is that mere insolvency is not itself an anticipatory breach. Forced by *Erie* to anticipate, we predict that the Louisiana courts would not extend the doctrine of anticipatory breach beyond the frontiers now established by the common law and leave the task of child rearing to the doctrine's legitimate parents—the courts of Louisiana.

1. Even the UCC, which would be applicable if this were a contract for the sale of goods and if the state law to be applied were other than that of Louisiana, requires that a party fearful of another's ability to perform allow him the opportunity to provide adequate assurance of performance before permanently, unilaterally ceasing performance. U.C.C. § 2–609.

The case is reversed and remanded with instructions to enter judgment for Ringel & Meyer and for computation of damages.