MORIAL, Judge.
The issue before the Court is the interpretation of an employment agreement between plaintiff and defendant, Slumberline, Inc. (Slumberline). Defendant, Carl F. Stockmeyer, Jr. (Stockmeyer), is the registered owner of 100% of 186 shares of the outstanding stock of Slumberline’s 1000 au *454 thorized shares of no par capital stock. Plaintiff entered the employment of Slum-berline on June 1, 1967 pursuant to the terms and conditions of a document drafted by Stockmeyer, the pertinent parts of which read as follows:
“Ray Frazier Proposed Employment
1) Salary at a rate of $2,500.00 per month
i{c ifi ‡ % * ‡
3) Mr. Frazier on start of employment to be given 10% of the stock of the Company. If prior to October 1, 1968 is fired from the Company he will be given a severance pay of $8,000.00. If he resigns prior to Oct. 1, 1968 this free stock to be returned to the Company without compensation for same.
a) If Mr. Frazier resigns after October 1, 1968 he will be paid for this stock the existing book value as of the nearest fiscal closing date minus $700.00 per share.
b) If Mr. Frazier is fired from the company after October 1, 1968, he will be paid the existing book value of the stocck [sic] as of the nearest fiscal clsoing [sic] date.”
After a trial on the merits the district court rendered judgment against Slumber-line decreeing that plaintiff (1) be declared the owner of 20 shares of stock of Slumberline; (2) is entitled to $6,000.00 with interest from judicial demand as severance pay, being $8,000.00 as provided for in the contract less a credit of $2,000.00 previously paid; and (3) is obliged to sell to Slumberline his 20 shares of stock at book value as of September 30, 1968, said book value to be determined after trial of this issue. Defendants appeal.
Defendants argue that plaintiff (1) is entitled to no more than 10% of the stock of Slumberline issued and outstanding at the time plaintiff commenced employment; (2) is obliged to sell the said stock to Slumberline at its book value as of September 30, 1968; and (3) is not entitled to any severance pay.
Plaintiff answers the appeal praying for retention of ownership of the stock given to him at the commencement of his employment and for the judgment to be amended to include Stockmeyer as a soli-darily liable co-defendant.
Stockmeyer died prior to the trial. Except for his answers to interrogatories which are of no evidentiary value in a resolution of this dispute, we have no testimony from Stockmeyer.
Plaintiff’s testimony is that he relied upon certain verbal assurances of Stock-meyer prior to the commencement of his employment after negotiations. There is nothing inconsistent with plaintiff’s testimony and the document introduced into evidence and styled “Ray Frazier Proposed Employment,” except that in fact 186 shares of the capital stock of Slumberline had been issued and not 200 shares as represented by Stockmeyer to plaintiff and recited in that document.
According to paragraph 3 of that document, plaintiff is entitled to 10% of the stock (shareholder equity ownership) of Slumberline. We must decide what number of shares of the capital stock of Slumberline represents 10% of the stock (shareholder equity ownership) at the start of plaintiff’s employment. Since plaintiff was to have a shareholder’s equity ownership of 10%, Stockmeyer’s was to be 90% represented by the 186 shares of capital stock issued and outstanding in his name. Therefore, if 186 shares represents 90% ownership what is 10% ownership? A ten percent shareholder’s equity ownership at the time plaintiff commenced employ *455 ment would have been represented by 20.66 shares of the capital stock of Slumberline.[1]
We agree with the undisputed finding of the district court that plaintiff’s employment was terminated by Slumberline after October 1, 1968. It is implicit that the shares designated “free stock” to which plaintiff became entitled must be sold to Slumberline in accordance with the provisions paragraph 3b of the agreement. Plaintiff argues that he is given the option to either sell his (free) stock at a stated price or to keep it. Such interpretation violates the clear and unambiguous language as well as the sense and spirit of paragraphs 3a and 3b.
Unless plaintiff was fired prior to October 1, 1968 he has no right to severance pay. Plaintiff argues that he was constructively fired by several letters from Stockmeyer prior to October 1, 1968. Apparently, the district court erroneously reached this conclusion since it awarded severance pay pursuant to section 3. While these letters could be construed as containing expressions evidencing an intention to change the conditions of plaintiffs employment because of a failure to maintain the profit structure of 1966, they did not, under any interpretation of their content, terminate plaintiff’s employment by Slumber-line.[2]
Plaintiff did not treat the agreement as breached by those letters. He continued in Slumberline’s employment and received the salary of $2,500.00 per month, as provided for in the agreement, through October 1, 1968. Therefore, even if the letter of July 26, 1968 were a repudiation of Slumber-line’s promise to pay plaintiff’s salary, such repudiation was in fact retracted prior to performance. It was not necessary for plaintiff to continue in Slumberline’s employment as a condition precedent to a claim if he deemed the agreement was breached by the July 26, 1968 letter. See Marek v. McHardy, 234 La. 841, 101 So.2d 689 (1958). Plaintiff remained in the employment of Slumberline until his employ *456 ment terminated on October 2, 1968 when he refused to accept a change in the terms of his compensation as provided for in the letter of that date. Accordingly, plaintiff has no right to severance pay.
. There is no merit to plaintiffs contention that Stockmeyer is solidarily liable as a co-defendant. Plaintiff contracted with Slumberline not Stockmeyer.[3]
For the foregoing reasons it is ordered, adjudged and decreed that the judgment of the district court in favor of plaintiff and against Slumberline, Inc., in the full sum of $6,000.00 with interest from judicial demand, as severance pay, being $8,000.00 provided for in the contract, subject to a credit of $2,000.00[4] is hereby reversed; it is further ordered, adjudged and decreed that the judgment of the district court is amended and the plaintiff, Willis R. Frazier, is hereby declared the owner of 20.66 shares of the capital stock of Slumberline, Inc., which shares of stock he is ordered to sell to Slumberline, Inc., at their book value as of the fiscal closing nearest October 1, 1968; it is further ordered, adjudged and decreed that this matter be, and it is hereby remanded for a determination of the book value of said shares of stock in accordance with paragraph 3b of the agreement styled “Ray Frazier Proposed Employment.”
Reversed in part, amended in part, remanded in part.
SUPPLEMENTARY STATEMENT
PER CURIAM.
Plaintiff is to pay all costs.

. 20.06 shares is arrived at by multiplying 186 by 10 and then dividing it by 90 to obtain the respective number of shares of capital stock required to be owned for a 10% shareholder’s equity ownership.

. Two letters are pertinent to plaintiff’s position.
The letter of July 20, 1968 states in part, “ * * * To be very blunt, neither your sales ability nor your sales management ability has been sufficiently demonstrated to carry the weight of our increased sales costs.” It sets forth in detailed narrative and via charts a recap of the profit structure and then concludes:
“I feel very strongly that our sales effort has been vasily lacking and that entirely too much has been given by this company for too little in return, to the point where this company cannot afford it. IT WAS AN EXPERIMENT OR BETTER AN ATTEMPT TO OO FORWARD.
“BUT NOW, IT IS COMPANY LIFE OR DEATH. Therefore, as President of this Company, I direct that our sales effort commencing with August 1, 1968 produce an accumulative sales effort of $145,000 per month at 60% cost of materials. Failure to do so will have to result in the immediate reduction of salesmen salaries and or commissions between $25,000 and $40,000 per year. In nowise your working of a territory would alleviate the necessity of your carrying your other duties so very definitely the sales goal must be reached.
“I repeat that you are of great help in this business but unfortunately the men are not carrying their share of the load, as well evidenced by the chart on page 2 of this letter. “ABSOLUTELY SOMETHING HAS TO GIVE AT ONCE! Either sales UP on [sic] Selling costs down. There is not [sic] alternative to either choice.
The letter of July 26, 1968 stated:
“Effective August 1, 1968 your salary will be paid at the end of the month instead of twice monthly, also that payment of salary will be conditional on making a profit. It is pointed out that profit can be made by either selling $145,000.00 per month (shipping same) or by reduction of salesmen’s commissions. Profit will be construed as if your salary had been paid when computing monthly profit, also my salary will be computed in as if covered by the business instead of being a capital withdrawl if profits insufficient to cover same.” The plaintiff signed his name to this letter above the word “acknowledged.”

. Stockmeyer did nothing violative of the rights of plaintiff as a minority stockholder of Slumberline.

. Plaintiff was paid $2,000.00 by defendant after his employment was terminated on October 2, 1968. Slumberline’s answer stated this payment was made to give plaintiff the benefit of paragraph 3b. Slumberline makes no claim for its return.