KLIEBERT, Judge.
Following a fire on the leased premises on May 13, 1981, Howard Motors, Inc., the original lessee, filed suit against their lessors, James E. Beeson and Sam Gattuso, for money damages. The basis for lessee’s claim was the lessors’ alleged breach of the lease agreement by their failure to repair the damages caused by the fire. The lessors defended on the grounds the lease had terminated under its own provisions, hence, they were not required to make the repairs. Incorporated in lessors’ answer was a re-conventional demand for money damages based on the allegation lessee remained in possession of the leased premises notwithstanding its termination.
By a separate action, lessors sued their insurer, CNA Insurance Company, to recover under its fire insurance policy the total fire coverage of $75,000.00, together with penalties and attorney fees, as provided for under LSA-R.S. 22:658, because of insurer’s arbitrary and capricious failure to pay the claim within 60 days of receipt of lessors’ proof of loss.
Also, by a separate suit, Spinato Chrysler Plymouth, Inc., a sublessee of Howard Motors, Inc., sued Howard for damages based on Howard’s breach of the sublease for failure to repair the damages caused by the fire.
*654 All three suits were consolidated for a bench trial. After trial, the judge concluded the claims by the lessee and the subles-see turned on whether the damages caused by the fire could be repaired within 120 days. Having found as a fact that the damages could not be repaired within this time frame, he rendered judgment on April 15, 1983 dismissing the claims of Howard and those of Spinato, as well as the Beeson and Gattuso reconventional demand against Howard. He also found CNA’s delay in making payment under the fire policy was not unreasonable. Consequently, in the same judgment, he dismissed Howard’s claim against CNA for penalties and attorney’s fees.
Both lessee and lessors appealed the judgment. Spinato and CNA did not appeal nor did they answer the appeal. The questions raised on the appeal are the same as those raised in the trial court, i.e., (1) was the lease breached by either the lessee or the lessors, and (2) were the lessors entitled to statutory penalties and attorney’s fees from their insurer? For the reasons hereafter stated, under the headings indicated, we affirm the trial court on both issues.
BREACH OF THE LEASE
On the appeal, Howard’s three contentions are: (1) there was an anticipatory breach of the lease by the lessors, (2) the lessors are estopped from contending they had no obligation to repair the fire damaged building, and (3) the trial judge erred in finding as a matter of fact that the repairs could not be performed within the 120 day time frame. The anticipatory breach contention is grounded in Gattuso’s statement to Spinato, the day after the fire, that he would not repair the fire damage to the building for the rents then being paid under the lease. The estoppel contention is grounded in lessors’ allegation in the petition filed against CNA claiming future rentals as an item of damages for failure to timely pay the insurance claim.
Lessors, on the other hand, contend none of the contentions made by Howard are relevant. The trial judge concluded, and we agree, all issues between the lessors and the lessee, and those between the lessee and the sublessee, turn on the interpretation of the following provision contained in the lease:
“If through no fault, neglect or design of Lessee, the premises are destroyed by fire or other casualty or damaged to such an extent as to render them wholly unfit for occupancy, then this lease shall be cancelled. If, however, the premises can be repaired within 120 days from date of fire or casualty, then this lease shall not be cancelled, and Lessor shall notify Lessee within 30 days from date of fire or casualty that Lessor will repair the damage, and Lessee shall be entitled only to such a reduction or remission of rent as shall be just and proportionate.” (Emphasis Supplied)
This provision is the one contained in the standard New Orleans Real Estate Board commercial lease form. The exact provision was at issue in Degrey v. Fox, 205 So.2d 849 (4th Cir.1968). The Fourth Circuit Court of Appeal held that, under the first sentence of the clause, the lease is cancelled if the fire renders the property unfit for occupancy. The second sentence conditions the first in that the lessor may avoid cancellation of the lease if he can repair the premises in 120 days. During the repair period, the lessee is entitled to remission of the rents.
Here the evidence is clear. After the fire, the leased premises were unfit for occupancy. Spinato vacated the premises immediately after the fire. Its employee testified that the car dealership was unable to operate from the leased premises. Mechanical engineers described the remains of the building as “junk”. Although the experts differ on other issues, none said the premises were fit for occupancy. Their difference was with respect to the time needed to make the repairs.
Once the fire rendered the building unfit for occupancy, by complying with the notice and construction period stated in the lease, the lessor could, but was not obligat *655 ed to, repair the building. Degrey v. Fox, supra. Although Civil Code Article 2697 grants the option of maintaining the lease to the lessee under the lease provisions here involved, the option to repair is in the lessor, not the lessee.
Shortly after the fire, Gattuso inspected the premises while accompanied by Spinato. At that time, Gattuso informed Spinato he would not repair the building for the rentals then being paid under the lease. Now, Howard argues the refusal to repair was an anticipated breach which entitled Howard to immediate damages for the breach. We agree Louisiana recognizes an anticipatory breach of a contract. See Marek v. McHardy, 234 La. 841, 101 So.2d 689 (1958). Andrew Development Corporation v. West Esplanade Corp., 347 So.2d 210 (La.1977). However, here the fire rendered the lease premises unfit for occupancy; therefore, the fire terminated the lease, save for the lessors’ option to give timely notice of his election to repair the premises within the 120 day period. Thus, we view Gattuso’s statement as an expression of his intention not to exercise lessors’ option to repair because it was not economically feasible to do so rather than an anticipatory breach. Moreover, shortly after Gattuso made the statement lessors gave to Howard the formal written notice of their decision not to repair the leased premises. Therefore, we believe Howard’s contention as to an anticipatory breach is without merit.
Howard also contends lessor’s allegations in the suit against CNA claiming the insurer’s failure to pay the insurance claim resulted in their inability to rebuild the structure estops lessors from now contending it had no obligation to repair the fire-damaged building. Since the fire terminated the lease and lessors were under no obligation to effect the repairs, Howard’s contention as to an estoppel is irrelevant to the situation present here.
Further, even assuming arguendo that lessee, rather than lessors, had the repair option, we cannot say the trial judge erred in finding that the building could not be repaired within 120 days. From our review of the record we believe there was more than ample evidence to support the trial judge’s finding of fact. Although the essence of the expert’s testimony was that the actual construction time would be something less than 120 days, it is apparent, even from expert testimony introduced by Howard, that when the time to examine and test the residual structure and obtain plans, permits and prices for the repairs is considered and added to the actual construction time, it is reasonable to conclude the time necessary to restore the leased premises to its condition immediately prior to the fire would exceed 120 days.
For the reasons above stated, we affirm the trial judge’s dismissal of Howard and Spinato’s claims. We next consider lessee’s contention the lessors breached the lease.
By letter dated May 20, 1981, lessors informed lessee the May 13, 1981 fire can-celled the lease. On June 24, 1981, Howard, through its counsel, informed counsel for lessors that it did not consider the lease cancelled.
Lessors reconvened in the trial court for and now claims from Howard damages and attorney fees contending Howard breached the lease entitling them to damages under the following lease provisions:
“At the expiration of the lease, or its termination for causes, Lessee is obligated to immediately surrender possession and should Lessee fail to do so, he consents to pay any and all damages, but in no case less than five times the rent per day, with attorney fees, costs, etc....” (Emphasis Supplied.)
Howard and Spinato, the sublessees claiming through Howard’s lease, were not in physical possession of the lease premises. Further, the lease premises were not fit for occupancy. Consequently, the lessors were free to take physical possession of the property at any time it chose to do so. Under those circumstances the above quoted provision is not applicable.
*656 CLAIMS FOR STATUTORY PENALTIES AND ATTORNEY FEES AGAINST INSURER
The parties have stipulated that Beeson and Gattuso filed a proof of loss effective May 14, 1981. On May 20, 1981, CNA’s local representative requested permission from her home office to hire an investigator to investigate the possibility of arson, based on information she received from another investigator. On June 1, 1981, INS Investigations Bureau (INS) was retained to conduct the investigation. INS furnished CNA with three reports concerning their investigation; the first of which was dated June 12, 1981 concluded the fire was of an incendiary origin and the insureds had a motive for setting the fire. The second report dated July 20, 1982 reiterated INS’s suspicions and concluded the further investigation, in cooperation with local fire officials, was in order. The final report, dated August 20, 1981, concluded that since there were no further developments in the investigation the case was to be closed. This report was stamped as having been received by the CNA Group on August 24, 1981.
On October 20, 1981, CNA’s local agent noted in his file that he was awaiting a decision from CNA to settle the claim. On October 23, 1981, CNA’s local agent attempted to tender payment to the insureds through their attorney. The attorney, on behalf of his client, refused the offer of $75,000.00. Rather, he informed them that he would seek penalties and attorney’s fees in a suit filed to collect the proceeds.
Appellants now contend that CNA’s failure to pay their claim was “arbitrary, capricious, and without probable cause”, subjecting them to penalties and attorney’s fees, under LSA-R.S. 22:658. CNA contends the delay in payment was reasonable because of their suspicions of arson. They rely on Benoit v. American Mutual Ins. Co. of Boston, 236 So.2d 674 (3rd Cir.1970), which they contend is factually similar to the instant case. In Benoit, the court concluded that the insurer had sixty (60) days from the last date that they maintained a reasonable suspicion of arson in which to make payment.
The trial judge found CNA’s delay in payment was reasonable because of the suspicion of arson, hence, they were not arbitrary or capricious in failing to pay the claim within sixty (60) days from the date the proof of loss was received. We agree and hence affirm the trial judge.
Each party is to bear his own cost of the appeal.
AFFIRMED.