339 So.2d 490 (1976)
Robert SIMPSON et ux., Plaintiffs-Appellees,
v.
KELLY SERVICES, INC., Defendant-Appellant.
No. 13031.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1976.
Rehearing Denied December 6, 1976.
Writ Refused February 9, 1977.
*491 Hargrove, Guyton, Ramey & Barlow by Thomas J. Wyatt, Shreveport, Cedric A. Richner, Jr., Detroit, Mich., for defendant-appellant.
Hamilton & Sermons by Joel M. Sermons, Shreveport, for plaintiffs-appellees.
Before BOLIN, MARVIN and JONES, JJ.
En Banc. Rehearing Denied December 6, 1976.
MARVIN, Judge.
Kelly Services supplies temporary employees to various businesses across the nation. In 1974, it terminated the services of plaintiff, Mrs. Simpson, as its agent and manager of its Shreveport branch office. Mrs. Simpson, joined with her husband as co-plaintiff, brought suit on the contract she had with Kelly Services.
The contract contains provisions for liquidated damages in the event of Mrs. Simpson's termination and a formula or schedule by which these damages are to be determined. It also contains an agreement not to compete and for liquidated damages which are applicable to Mrs. Simpson. The lower court resolved the contractual dispute in plaintiff's favor. Kelly Services appeals. We reverse and remand.
The pertinent sections of the contract provide that Kelly Services may terminate its contract at any time,
". . . but Kelly shall thereupon become obligated to pay to the Manager . . . a sum [determined by schedule or formula which follows] . . .
"Payment of such sums to the Manager shall be contingent upon the Manager's continued compliance with all of the provisions of paragraph 11 below and schedule A attached and shall be compensation for such compliance with the limited Agreement Not To Compete.
* * * * * *
"11. Kelly's Rights Upon Termination. Upon termination of this agreement for any reason, the Manager agrees:
* * * * * *
"(d) Not to compete with Kelly for a limited period of time after the effective date of termination of this agreement and in limited geographical areas as more specifically set forth on Schedule A attached hereto and incorporated by reference herein, which Schedule the Manager acknowledges he has read and signed."
Schedule A, which follows, provides that:
". . . the Manager shall not compete with Kelly after the effective date of termination for a period of six (6) months, within fifty (50) miles of any city in which Kelly is then doing business.
* * * * * *
"4. The Manager further agrees that a violation by him of the terms hereof will result in damage to Kelly which will be difficult or impossible to determine exactly. Therefore, in addition to any equitable remedy Kelly may have, if the Manager *492 violates the provisions of the terms hereof, the Manager agrees that Kelly shall be entitled to recover from the Manager as liquidated damages all profits earned or received by the Manager from the operation of such competitive business for a period of six (6) months. The Manager's profits for this purpose shall be computed without deduction of any compensation paid to him."
On October 8, 1974, Kelly Services informed plaintiffs in writing that Mrs. Simpson's services as manager under the contract were being terminated effective October 11, 1974. When this notification was delivered by Kelly employees, a dispute arose as to the amount Mrs. Simpson would receive as termination or severance compensation under the contract. This dispute was resolved at the close of the evidence below when appellant's counsel conceded the effective date of the contract, which in effect determined the amount of severance compensation due, if due at all, was as plaintiffs had originally contended.
After the dispute as to severance compensation arose on October 8, plaintiffs, beginning on Monday, October 14, continued in essentially the same business, at the same location and using the same office furnishings, but with a new telephone number and name, Jean Simpson Temporary Employment.
The lower court did not consider the effect of R.S. 23:921[1], finding it was not necessary to determine whether Mrs. Simpson was an employee or independent contractor of Kelly Services.
When Kelly Services gave notice of termination it agreed to pay severance compensation provided by the contract to Mrs. Simpson. Kelly Services contended the contract with Mrs. Simpson had been in effect less than five years and that the amount it would owe was less than Mrs. Simpson claimed on the contention that the contract had been in effect over five years. The phase of the dispute was eventually resolved by concessions of defendant and by the trial court before it rendered its decision.
In written reasons for judgment, the lower court found that Kelly Services breached the contract by its failure to pay the "proper" sum upon Mrs. Simpson's termination and was thereby barred from claiming damages against Mrs. Simpson because of her competing with Kelly Services, contrary to the non-competition and liquidated damage provisions of the contract. The lower court found that the actions of Kelly Services concerning the amount of severance compensation constituted an "anticipatory breach" of the type recognized in Marek v. McHardy, 234 La. 841, 101 So.2d 689 (1958). The lower court's reliance on Marek is misplaced.
Dr. Marek there agreed that he would work 36 months on salary for the defendant doctors, at the end of which time he would be further compensated with a ten percent ownership in the medical group or partnership and its facilities. In the 34th month, the defendant doctors advised Dr. Marek that they had no intention of fulfilling the contract and that he would have to pay for the ten percent interest if he wanted it. Dr. Marek left the group, went to practice elsewhere and sued for his interest. Defendants resisted on several grounds, including the contention that Dr. Marek himself breached the contract when he did not continue to work for defendants the remaining *493 two months of the 36 month period. The Supreme Court said Dr. Marek was legally justified in treating the contract as breached when defendants informed him they would not make the transfer to him as promised. The case was then remanded for trial on the merits.
In Marek, the court was not construing contractual provisions of the type at issue here which provide for the contingency of termination at will, with liquidated damages, and which stipulate against competition by the terminated party against the other for a six-months period after termination.
The contract at issue here is for an indefinite period. It provides that either Mrs. Simpson or Kelly Services may terminate the contract, with or without cause. It also provides in detail for the contingency of termination, final accounting between the parties and for payment after termination of commissions earned before termination.
In the written notice of termination, Kelly Services unequivocally said in part:
"We will pay you the commissions earned to the date of termination and a sum of money equal to net commissions earned in the three preceding months as provided in Paragraph 8(b). We direct your attention to the provisions in the Branch Manager Contract which state that the payments to you are contingent upon your compliance with the provisions of Paragraph 11 and the non-competition provisions of the Branch Manager Contract. We also direct your attention to other provisions of the Branch Manager Contract which by their nature survive termination."
The three-month provision was according to the schedule and formula if the contract between them had been in effect for less than five years as Kelly Services originally contended. We do not construe the written notice as a repudiation by Kelly Services of its obligation to pay liquidated damages, but as a recognition of the obligation. What was immediately disputed was not the obligation, but the amount under the schedule as determined by the length of time the contract had been in effect.[2]
Moreover, Mrs. Simpson contended that she was due her earned commissions and liquidated damages in a lump sum when she was given the notice of termination. The contract, however, does not provide Mrs. Simpson with this privilege. It says in paragraph 8(b):
". . . Payment of the commissions earned . . . shall be made on the commission payment date set forth in paragraph 5 and payment of the balance of Kelly's liability [which we interpret to mean the severance compensation also provided in paragraph 8(b)] shall then be made in equal monthly installments on the six (6) commission payment dates commencing on the first commission payment date occurring (90) days following termination under this sub-paragraph. At Kelly's option, such payments may be made earlier than required."

Thus, it is apparent that each party misinterpreted the provisions of the contract which were respectively applicable. Misinterpretation in this instance, is not synonymous with repudiation as in Marek, which we find inapposite. Suit and reconventional demands were filed by the parties four-five months after the dispute arose.
The contract will be enforced against each party as written, unless Mrs. Simpson's status be such that R.S. 23:921 is applicable, or unless the agreement not to compete is found unreasonable in some respect. See Gold & Suckle, Inc. v. Suckle et al., 335 So.2d 713 (La.App.2d Cir. 1976).
The agreement not to compete is reasonable as to time (six months) and as to area (within 50 miles of any city in which Kelly is then doing business).

MRS. SIMPSON'S STATUS
Kelly Services operates through two types of branch offices. In company owned *494 branches, the personnel are salaried employees of Kelly Services who work at the direction of supervisory employees. In branches such as the Shreveport office, the branch managers work under contract on a commission basis and furnish, at their own expense, the facilities necessary for the operation of the business. The so-called Kelly girls who serve as temporary employees for the clients (businesses) doing business with a particular branch office, are employees of Kelly Services and are paid by Kelly Services. Kelly Services bills the clients for the temporary help on an hourly or periodic basis which is a greater amount than actually paid to the temporary help. From the difference in the amount paid the temporary employees by Kelly Services and the amount collected from the business client comes the commissions to the branch manager under contract and profits to Kelly Services. In branch offices under contract, the branch managers are not paid a salary by Kelly Services.
The contract in this respect provides:
"1. Purpose and Scope. This agreement establishes the Manager as Kelly's agent to furnish through Kelly's temporary personnel the following temporary business services: office and clerical, marketing, technical (but not services constituting the practice of any licensed profession) and labor. These services and the business of conducting such services are collectively referred to in this agreement as `Kelly Services.' These services may be furnished under the following individual names: office and clericalKelly Girl; marketingKelly Marketing; technicalKelly Technical; industrial or laborKelly Labor. This agreement covers only the temporary business services listed above.
* * * * * *
"15. Manager Not Employee. Neither the Manager nor any individual whose compensation for services is paid by the Manager is in any way, directly or indirectly, expressly or by implication, to be construed to be an employee of Kelly for any purpose, and particularly with respect to any tax or contribution or requirement of withholding levied by federal, state or local laws with respect to employment or compensation for employment; and the Manager hereby accepts exclusive liability for any payroll taxes, for contributions imposed by any such statutes with respect to the Manager and to the individuals whose compensation for services is paid by the Manager, it being the intent of the parties that the Manager, as agent, be an independent contractor. Any other businesses which the Manager currently operates shall be set forth by name and nature of business on Schedule B attached and Kelly shall be informed immediately of any new business with which the Manager becomes associated."
During the time the contract was effective, Mr. and Mrs. Simpson followed some, but not all, of the suggestions and recommendations of Kelly Services for conducting the business.
"It is well settled by our jurisprudence that besides other factors, the most important test in determining `whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer.' It is also well settled that whether the employer `actually exercises control or supervision' over the movements and the services rendered by the employee, such a fact is of no great moment, the `important question is whether, from the nature of the relationship, he had the right to do so'. * * *
"In the case of Hartwig Moss Ins. Agency, Limited, v. Board of Com'rs of Port of New Orleans, 206 La. 395, 19 So.2d 178, 184, we said:
"`An independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.' See `Independent Contractor' in 21 Words and Phrases, *495 Perm.Ed. p. 100.'" Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483, 486. (footnotes omitted).
While Mrs. Simpson was subject to some degree of control by Kelly in the procedures she followed in the operation of the branch office (billing and reporting procedures, use and advertisement of the company name, utilization of company forms), we do not find that this degree of control was sufficient in this type operation to make Mrs. Simpson an employee of Kelly Services. Fine v. Property Damage Appraisers, Inc., 393 F.Supp. 1304 (E.D.La.1975) does not persuade us otherwise.
According to our interpretation, R.S. 23:921 applies only to persons in employee-employer relationships and will not be extended to other relationships by judicial construction or interpretation.

CONCLUSION
The provisions of this contract are to be read together and enforced respectively against each party as applicable. Each party is entitled to liquidated damages as the contract provides against the other. We remand for further proceedings, primarily on the reconventional demand of Kelly Services as against original plaintiffs for liquidated damages to be determined as the contract provides and consistent with this opinion.
Costs of this appeal are assessed equally to each party.
Reversed and Remanded.
NOTES
[1] "No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years."
[2] The managerial contract was dated September 8, 1969, but was not signed by Kelly Services as "accepted" until October 24, 1969. The termination notice of October 8, 1974, was between the respective fifth anniversary of these dates.