# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 CA 0770

## ARTHUR J. GALLAGHER & CO.

### VERSUS

## MADISON ANNISON, BRITTANY CATES, WENDY DUTHU, JESSICA RATELLE LACEY, PRESTON PECUE, ZACH STAFFORD, AND LOCKTON-DUNNING SERIES OF LOCKTON COMPANIES, LLC

**DATE OF JUDGMENT:** JUN 1 3 2024

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA
NUMBER 726037, SECTION 21

HONORABLE RONALD R. JOHNSON, JUDGE

* * * * * *

Thomas H. Kiggans
Shelton Dennis Blunt
A. Paul LeBlanc, Jr.
Baton Rouge, Louisiana

Matthew Z. Zimmerman
Seth J. Welner
West Palm Beach, Florida

John W. Joyce
Shaun P. McFall
Kansas M. Guidry
New Orleans, Louisiana

Lyle E. Shapiro
Miami, Florida

Counsel for Plaintiff-Appellee
Arthur J. Gallagher & Co.

Counsel for Defendants-Appellants
Wendy Duthu, Jessica Ratelle Lacey,
Preston Pecue, Zachary Stafford, and
Lockton-Dunning Series of Lockton
Companies, LLC
and
Counsel for Defendants-Appellees
Madison Annison and Brittany Cates

* * * * * *

BEFORE: GUIDRY, C.J., WELCH, THERIOT, CHUTZ, AND LANIER, JJ.

Disposition: **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED WITH ORDER.**

Welch J. I dissent for reasons assigned by CJ Guidry

[illegible] Dissents in part and assigns reasons

**CHUTZ, J.**

Defendants-appellants, Wendy Duthu, Jessica Lacey, Preston Pecue, and Zachary Stafford, appeal the trial court's judgment, issuing a preliminary injunction enforcing non-competition covenants set forth in employment agreements they executed with their former employer, Arthur J. Gallagher & Co. (Gallagher). In addition, Gallagher answered the appeal, challenging the trial court's denial of a preliminary injunction to enforce the non-competition covenants set forth in employment agreements executed by defendants-appellees, Madison Annison and Brittany Cates. We affirm in part, reverse and render in part, and remand with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

Gallagher initiated this lawsuit on November 22, 2022, by filing a verified petition requesting injunctive relief, naming as defendants Stafford, Duthu, Lacey, Pecue, Annison, and Cates (collectively defendants).[1] Gallagher averred that it is one of the largest insurance brokerages in the U.S. with a substantial presence in Louisiana, and that it provides insurance brokerage and consulting services, including employee benefits insurance, retirement plans, and administrative services, to businesses. It is undisputed that defendants all resigned within a couple of hours of one another on November 16, 2022. Gallagher sought injunctive relief averring that defendants had already breached or were about to breach the non-competition covenants set forth in their employment agreements. Thus, Gallagher sought to preclude defendants from attempting to solicit or service the business of any company that was a Gallagher client on November 16, 2022, the date that

---

[1] Gallagher also claimed entitlement to damages and declaratory relief and named as an additional defendant, Lockton-Dunning Series of Lockton Companies LLC (Lockton), the present employer of the former employees, whom Gallagher averred is its direct competitor. These claims were not addressed in the appealed judgment.

2

defendants left Gallagher's employment. Additionally, Gallagher sought to enjoin defendants from disclosing confidential information, as defined in the agreement.

On November 23, 2022, defendants filed an opposition to the temporary restraining order (TRO) and preliminary injunction that Gallagher requested. The trial court signed an order on December 1, 2022, denying Gallagher's application for a TRO and setting a preliminary injunction hearing.[2]

The preliminary injunction hearing was held on December 12, 2022, but because the parties were unable to fully present their evidence, the matter was continued until March 3, 2023. At the conclusion of the hearing, the matter was submitted to the trial court. On March 30, 2023, the trial court issued written reasons, findings of fact, and conclusions of law, denying the preliminary injunction and directing counsel for defendants to prepare a judgment in conformity with its ruling. But before the trial court signed a judgment, Gallagher filed a pleading entitled, "Plaintiff's Motion for Clarification on Ruling on Gallagher's Application for Preliminary Injunction," in which it sought a determination whether the trial court had considered but declined to apply the severance clause in each defendant's employment agreement or whether it had not considered an application of the severance provisions. A hearing on the motion was held on April 28, 2023.

The trial court issued an order on May 10, 2023, granting the motion for clarification, applying the severability clause, striking specific language from the non-competition covenants, and concluding that, as severed, the non-competition covenants were enforceable. On May 15, 2023, the trial court signed a judgment, granting a preliminary injunction, in part, insofar as the non-competition covenants signed by Stafford, Duthu, Lacey, and Pecue (collectively the former employees),

---

[2] The record does not contain an order setting the matter for hearing. But according to the signed order denying the TRO, a hearing was held on November 29, 2022, at which counsel for both Gallagher and the former employees were present.

3

restricting their activities until November 16, 2024, based on its application of the severance clauses set forth in their employment agreements. The former employees were also prohibited from disclosing confidential information. The trial court denied, in part, the preliminary injunctive relief that Gallagher sought as to the enforcement of the non-competition covenants imposed on Annison and Cates based on a finding that because each signed their respective agreement with Gallagher prior to the commencement of their employment, the restrictive agreements were unenforceable. The former employees have appealed, and Gallagher has answered the appeal.

## DISCUSSION

Non-competition agreements are disfavored in Louisiana as against public policy, except under the limited circumstances delineated by statute. See *Paradigm Health System, L.L.C. v. Faust*, 2016-1276 (La. App. 1st Cir. 4/12/17), 218 So.3d 1068, 1072; *Vartech Systems, Inc. v. Hayden*, 2005-2499 (La. App. 1st Cir. 12/20/06), 951 So.2d 247, 254. La. R.S. 23:921 provides, in pertinent part, as follows:

> A. Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable....
>
> C. Any person ... may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

To be valid under La. R.S. 23:921(C), a non-competition agreement may limit competition only in a business similar to that of the employer, in a specified geographic area wherein the employer carries on a like business, for up to two

4

years from termination of employment.[3] See *Paradigm Health System, L.L.C.*, 218 So.3d at 1072. Moreover, because non-competition agreements are in derogation of a common right, they must be strictly construed against the party seeking their enforcement. *Kimball v. Anesthesia Specialists of Baton Rouge, Inc.*, 2000-1954 (La. App. 1st Cir. 9/28/01), 809 So.2d 405, 410, writs denied, 01-3316, 01-3355 (La. 3/8/02), 811 So.2d 883 & 886.

Generally, a party seeking the issuance of a preliminary injunction[4] must show that he will suffer irreparable injury[5] if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case.[6] *Vartech Systems, Inc.*, 951 So.2d at 255. However, if an employee enters into a non-competition agreement with his employer pursuant to La. R.S. 23:921, the court shall order injunctive relief enforcing the agreement's terms upon proof by the employer of the employee's breach of the non-competition agreement, without the necessity of showing irreparable harm. See La. R.S. 23:921(H); *Paradigm Health System, L.L.C.*, 218 So.3d at 1072-73. While La. R.S. 23:921(H) mandates the court to issue injunctive relief upon proof of the employee's failure to perform, the

---

[3] The requirements of La. R.S. 23:921 apply to non-solicitation agreements, as well as to non-competition agreements. *Vartech Systems, Inc.*, 951 So.2d at 260. The parties do not dispute that the restrictive covenants set forth in the former employees' employment agreements with Gallagher are subject to the provisions of La. R.S. 23:921. For ease of discussion, we refer to the restrictive covenants in defendants' employment agreements collectively as non-competition agreements.

[4] A preliminary injunction may be granted pending a trial on the merits of a permanent injunction in order to preserve the pre-existing status of the parties. *Vartech Systems, Inc.*, 951 So.2d at 255 n.6 (citing *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall*, 2004-0211 (La. 3/18/04), 867 So.2d 651, 655).

[5] Generally, irreparable injury means that the party seeking the preliminary injunction cannot be adequately compensated in money damages for its injury or suffers injuries which cannot be measured by pecuniary standards. *Vartech Systems, Inc.*, 951 So.2d at 255 n.7 (citing *Shaw v. Hingle*, 94-1579 (La. 1/17/95), 648 So.2d 903, 905).

[6] In making a prima facie showing, the plaintiff is required to offer less proof than is necessary in an ordinary proceeding for permanent injunction. *Vartech Systems, Inc.*, 951 So.2d at 255 n.8 (citing *State through Louisiana State Bd. of Examiners of Psychologists of the Dep't of Health and Human Services v. Atterberry*, 95-0391 (La. App. 1st Cir. 11/9/95), 664 So.2d 1216, 1220).

employer must still establish it is entitled to relief. *J4H, L.L.C. v. Derouen*, 2010-0319 (La. App. 1st Cir. 9/10/10), 49 So.3d 10, 14; *Vartech Systems, Inc.*, 951 So.2d at 255.

The trial court enjoys considerable discretion in determining whether a preliminary injunction is warranted, and its determination will not be disturbed on appeal absent a clear abuse of discretion. This standard is based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding necessary to the proper exercise of its discretion. *Singleton v. E. Baton Rouge Par. Sch. Bd.*, 2022-0667 (La. App. 1st Cir. 9/16/22), 353 So.3d 164, 177. Where the underlying issue is whether the non-competition agreement falls within the exception found in La. R.S. 23:921(C), it is a matter of proper interpretation of a statute and, therefore, a question of law, which is reviewed de novo. See *Paradigm Health System, L.L.C.*, 218 So.3d at 1073. If a trial court's decision was based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference. *Singleton*, 353 So.3d at 177.

In this appeal, two versions of the employment agreements are before us. The employment contract signed by Stafford, who sold employee benefits, which included health, dental, vision, and life insurance, to businesses that wanted to provide those benefits to their employees, is distinct from that of the other defendants, who generally serviced the employee benefits to the clients that Stafford secured. Entitled "Protection of [Gallagher's] Protectable Interests," Section 8 of Stafford's agreement states:

> In order to protect the goodwill and other assets being acquired in the Transaction ... [Stafford] hereby agrees to the following restrictive covenants, which [Stafford] acknowledges and agrees are reasonably necessary and narrowly tailored to protect [Gallagher's] legitimate business interests:

6

A. For a period of two ... years following the termination of [Stafford's] employment with [Gallagher] for any reason whatsoever, [Stafford] will not, directly or indirectly, engage in providing Insurance Services or Benefit Services for: (x) any Account of [Gallagher] for which [Stafford] performed any of the foregoing functions during any part of the two ... year period immediately preceding such termination ... or (y) any Prospective Account of [Gallagher]....

C. The obligations set forth in this Section 8 shall be effective in the parishes specifically designated in the table attached hereto as Schedule 1, and in which [Gallagher] carries on the business of providing Insurance Services and/or Benefit Services.[7]

Schedule 1 identified nine parishes.

Before the trial court, Stafford asserted that the language "and in which [Gallagher] carries on the business of providing Insurance Services and/or Benefit Services," set forth in Section 8(C), was overly broad as to geographic location because it applied the restrictions of Section 8(A) to all parishes where Gallagher provided services rather than merely those nine parishes designated in Schedule 1 of his employment agreement. In its March 30, 2022 ruling, the trial court agreed with Stafford's interpretation and found the agreement unenforceable.

---

[7] The term "Insurance Services" is defined in the employment agreement as "transferring, placing, marketing, accepting, aiding, counseling or consulting in the placement, renewal, discontinuance or replacement of any insurance (including self-insurance) by, or handling self-insurance programs, insurance claims, risk management services or other insurance administrative or service functions." As used in the employment agreement, "Benefit Services" means "providing employee benefit brokerage, consulting, or administration services, in the area of group insurance," including individual life and disability products and all other employee benefit or human resource areas in which Gallagher is involved. For ease of reference, we refer to insurance services and benefit services collectively as "services."

Additionally, Stafford's contract provided that the term "Account of [Gallagher]" as set forth in Section 8(A) "shall be construed broadly to include all users of Insurance Services or Benefit Services including commercial and individual consumers, risk managers, carriers, agents and other insurance intermediaries who are customers of [Gallagher] on the date [Stafford's] employment with [Gallagher] terminates, or an insurance carrier offering a custom program for which [Gallagher] is a managing general agent, managing general underwriter, program manager or an underwriting agent." And "Prospective Account" is defined as "any entity ... whom, at any time during the one year preceding the termination of Employee's employment with [Gallagher], [Stafford]: (I) submitted or assisted in the submission of a presentation or proposal of any kind on behalf of [Gallagher], (II) had material contact with ... in connection with [Stafford's] employment with [Gallagher], or (III) incurred travel and/or entertainment expenses which were reimbursed by [Gallagher] to [Stafford]." For ease of reference, we refer to these Gallagher existing and prospective accounts as "Gallagher clients."

The employment agreements signed by the other defendants provided in Section 8, also entitled "Protection of [Gallagher's] Protectable Interests," the following:

A. To protect the legitimate interests of [Gallagher] in, among other things, protecting its ... employment relationships, relationships with [Gallagher] accounts and goodwill ... Employee agrees to the following restrictive covenants, which Employee acknowledges and agrees are reasonably necessary and narrowly tailored to protect [Gallagher's] legitimate business interests:

(1) For a period of twenty-four ... months ... following the termination of Employee's employment with [Gallagher] for any reason whatsoever Employee will not, directly or indirectly, solicit, transfer, place, market, accept, aid, counsel or consult in ["insurance services"] or provide ... ["benefit services"] for: (x) any Account of [Gallagher] for which Employee performed any of the foregoing functions during any part of the two-year period immediately preceding such termination ..., or (y) any Prospective Account of [Gallagher]."[8] ...

(4) **For LOUISIANA Employees Only.** Employee and [Gallagher] agree that this paragraph (A)(4) is necessary given the uniqueness of Louisiana law, and it will apply only for such period of time, if any, Employee is principally employed in **Louisiana** during which time the activity restrictions stated in the foregoing paragraph (A)(1) will apply only to activity undertaken by Employee in the following designated parishes ...[.]

**(Please reference Schedule A)[.]**

Schedule A in each of these defendants' employment agreements with Gallagher set forth a list of parishes in Louisiana and in some instances counties and municipalities in other states.

Before the trial court, the former employees pointed to the phrase "for such period of time, if any, Employee is principally employed in **Louisiana**" to assert that the restrictive covenants set forth in their employment agreements were not expressly limited to a period of two years as required in La. R.S. 23:921(C) and, as

---

[8] The substantive definitions of "insurance services," "benefits services," "Account of [Gallagher]" and "Prospective Account of [Gallagher]" are identical to those set forth in Stafford's employment agreement with Gallagher with small variations that are not at issue in this appeal. See n.7, supra.

such, were unenforceable. The trial court initially agreed with the former employees as set forth in its March 30, 2022 ruling.

**Application of the Severability Clause:**

Subsequent to March 30, 2022, in rendering its final judgment, the trial court considered and applied the severance provisions of the employment agreements. Section 11(G) of the employment agreements provided in part:

> To the extent that any of the terms set forth in this Agreement or any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, it is the intention of the parties that such word, phrase, clause or sentence will be modified or deleted by a court of competent jurisdiction so as to afford [Gallagher] the fullest protection commensurate with making this Agreement, as modified, legal and enforceable under applicable laws, and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.[9]

On appeal, the former employees contend that as to the Stafford contract, the testimonial evidence of Gallagher's corporate representative, Amanda Hamilton, established that Gallagher's intent was to prohibit Stafford from soliciting or competing everywhere Gallagher does business albeit only as to Gallagher clients. As such, severing the phrase "and in which [Gallagher] carries on the business of providing Insurance Services and/or Benefit Services," set forth in Section 8(C) constituted a change in Gallagher's intent, showing that the non-competition agreement cannot be severed without doing undue damage to the remainder of Stafford's employment agreement. As for the remaining employment agreements, the former employees similarly maintain that in light of Hamilton's expression of Gallagher's intent to enforce the restrictive covenants against the solicitation of or the provision of services to any Gallagher client regardless of the geographic scope set forth in the agreements, application of the severability clause of Section 11(G) amounts to a judicially rewritten contract inconsistent with the parties' intent.

---

[9] Section 11(G) of Stafford's employment agreement omits the phrase "it is the intention of the parties that" but is otherwise identical to the other former employees' employment agreements with Gallagher.

9

A noncompetition agreement is a contract between the parties and should be construed according to the general rules of contract interpretation provided in La. C.C. arts. 2045-2057. *Heard, McElroy & Vestal, LLC v. Schmidt*, 52,783 (La. App. 2d Cir. 9/25/19), 280 So.3d 806, 812. The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning. La. C.C. arts. 2045 & 2047. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. C.C. art. 2046; *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La. 6/29/01), 808 So.2d 294, 307. And where an employment contract with a non-competition agreement also contains a severability clause, application of the severability clause does not require a court to reform, redraft, or create a new agreement. It only requires that the offending portion of the agreement be severed. *SWAT 24 Shreveport Bossier, Inc.*, 808 So.2d at 308-09 (citing the dissenting opinion in *AMCOM of Louisiana, Inc. v. Battson*, 28,171 (La. App. 2d Cir. 1/5/96), 666 So.2d 1227, 1230, writ granted and judgment reversed, 96-0319 (La. 3/29/96), 670 So.2d 1223). Once severed, the remainder of the agreement is enforceable. See e.g., *Vartech Systems, Inc.*, 951 So.2d at 257 (relying on *SWAT 24 Shreveport Bossier, Inc.*, 808 So.2d at 307-08).

Here, the former employees' employment agreements with Gallagher included a severability clause. In each employment agreement, they agreed that to the extent any term, word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, that term, word, phrase, clause, or sentence would be modified or deleted by the court "so as to afford [Gallagher] the fullest protection commensurate with making this Agreement, as modified, legal and enforceable under applicable laws."

Because the severability provisions of each defendant's employment agreement are clear and unambiguous, extrinsic evidence as to the parties' intentions is inadmissible. See *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741, 748 ("The meaning and intent of the parties to a written instrument ... is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument."). The severability clause expressly states the parties' intention is to afford Gallagher the fullest protection commensurate with making the modified agreement legal and enforceable. Therefore, Gallagher's intent as testified to by Hamilton was inadmissible extrinsic evidence, and the trial court did not err in granting the preliminary injunction to restrict the activities of the former employees on this basis.

The former employees also maintain that in all the employment agreements (other than Stafford's), removal of the phrase "for such period of time, if any, Employee is principally employed in **Louisiana**" renders Section 8(A)(4) meaningless and leaves Louisiana employees without any applicable time restriction. As such, they suggest that the non-competition restriction is overly broad and unenforceable under La. R.S. 23:921. They further urge that even with the removal of the phrase, the remaining text fails to result in an enforceable non-competition agreement.

Mindful that each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole, see La. C.C. art. 2050, we find nothing in Section 8(A)(4) that eliminates the applicability of the 24-month time restriction set forth in Section 8(A)(1). The logical reading of the employment agreement reveals that the reference to "it" in Section 8(A)(4), i.e., "and it will apply for such period," is to the 24-month time

11

period in Section 8(A)(1). Deleting the phrase "if any, Employee is principally employed in **Louisiana** during which time" and the word "will" such that Section 8(A)(4), as modified, states (in relevant part):

> Employee and [Gallagher] agree that this paragraph (A)(4) is necessary given the uniqueness of Louisiana law, and it will apply only for such period of time the activity restrictions stated in the foregoing paragraph (A)(1) apply, only to activity undertaken by Employee in the following designated parishes.

As severed, Section 8(A)(4) leaves Section 8(A)(1) intact and affords Gallagher "the fullest protection commensurate with making [the] Agreement, as modified, legal and enforceable under applicable laws."

Therefore, in light of the broad language of the severability provisions, which is clear and unambiguous, the trial court did not err in applying it to the employment agreements. As such, the trial court did not commit error in issuance of the preliminary injunction on this basis.

**Breach of Non-competition Agreements:**

The former employees next contend that Gallagher failed to establish they each violated the restrictive covenants, urging that the record is devoid of evidence of any of them having violated the employment agreements. Therefore, they assert, the trial court abused its discretion in issuing the preliminary injunction since Gallagher failed to show any irreparable harm.

In their agreements, each of the former employees agreed not to provide services to Gallagher clients as defined in the agreement.[10] It is undisputed that the former employees worked for Lockton in its Baton Rouge office, which did not exist before the defendants left Gallagher's employment. Each of the former employees admitted that they have provided services to Gallagher clients after the clients moved their businesses to Lockton, with Lacey testifying that she began providing services to these former Gallagher clients after December 2, 2022, the

---

[10] See nn.7 & 8, supra.

12

day after the trial court signed a judgment denying Gallagher's request for a TRO. This testimony is sufficient to establish that the former employees provided services to Gallagher clients as defined in the agreement. As such, Gallagher made a prima facie showing that the former employees breached their obligations not to compete with Gallagher in East Baton Rouge Parish, a location identified in the attachment to each former employee's employment agreement, and was, therefore, entitled to the preliminary injunction without the necessity of showing irreparable harm.

Additionally, pursuant to La. R.S. 23:921(H), upon proof of the former employees' failure to perform in accordance with their respective employment agreements, Gallagher was entitled to injunctive relief enforcing the entirety of the employment agreements without establishing that the former employees had breached each individual obligation of the employment agreement. Thus, in order to obtain a preliminary injunction, Gallagher did not have to establish that the former employees solicited Gallagher clients or mishandled confidential information in violation of their respective employment agreements. Similarly, because of the former employees' acknowledgement of having provided services to Gallagher clients within the parishes set forth in the attached Schedule A (or Schedule 1 for Stafford), it was also irrelevant for purposes of preliminary injunctive relief whether they provided services from the former employees' Lockton Baton Rouge office to clients situated outside the geographic locations set forth in the attachments. Gallagher only had to establish a violation of the former employees' "obligation not to do." See La. R.S. 23:921(H); *Ethan & Associates, Inc. v. McKay*, 2005-2567 (La. App. 1st Cir. 12/6/06), 2006 WL 3544807, at *5.

Accordingly, we find no error in the trial court's conclusion that Gallagher's employment agreements were valid and enforceable, and we find no abuse of

13

discretion in the trial court's issuance of the preliminary injunction in favor of Gallagher. Based on the evidence presented at the hearing, Gallagher made a prima facie showing that the former employees had breached their respective employment agreements and was, therefore, entitled to a preliminary injunction enforcing the employment agreements, as modified by the trial court pursuant to the severability clause.

**Security for Preliminary Injunction:**

It is undisputed that the trial court issued the preliminary injunctions without requiring Gallagher to furnish security. According to La. C.C.P. art 3610, "A ... preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law. The security shall indemnify the person wrongfully restrained or enjoined for the payment of costs incurred and damages sustained." Gallagher has cited, and we have found, no applicable statutory provision exempting Gallagher from furnishing security.

When an injunction has been granted without security, an appellate court may either set aside the preliminary injunction or remand the matter to the trial court for the fixing of security. We find the interests of justice and judicial economy are best served by remanding this matter to the trial court to require Gallagher to furnish security. See *S. LA Contractors, LLC v. MAPP, LLC*, 2022-0024 (La. App. 1st Cir. 9/16/22), 353 So.3d 144, 152, <u>writ denied</u>, 2022-01612 (La. 4/25/23), 359 So.3d 989. On remand, the trial court is to fix the security consistent with Article 3610.

**Answer:**

Gallagher challenges the trial court's denial of a preliminary injunction as to Annison and Cates based on its finding that because each signed her employment

14

agreement prior to commencing employment, the non-competition covenants were inapplicable. Gallagher contends the trial court abused its discretion when it denied relief.

It is undisputed that when Annison and Cates signed their respective employment agreements, neither was employed by Gallagher. Although Annison's agreement was signed on May 20, 2022, "[t]he parties agree[d] that the Effective Date of [the] Agreement will be 6/1/22," which conforms to Annison's testimony as to her first date of employment. And while Cates agreement was signed on February 7, 2019, "[t]he parties agree[d] that the Effective Date of [the] Agreement will be 2/25/19, 9:00 AM," which conforms to Cates' testimony as to her first date of employment.

As we have already noted, non-competition agreements are unfavored in Louisiana, narrowly and strictly construed, and are null and void unless they fall within a statutory exception set forth in La. R.S. 23:921. Subsection (C) of that statute provides that "[a]ny person ... who is employed as an agent, servant, or employee may agree with his employer" to restrictive employment covenants. Therefore, where a former employee signed his employment agreement nearly a month before he accepted his former employer's offer of employment, the court determined the non-competition agreement was unenforceable. See *Rouses Enterprises, L.L.C. v. Clapp*, 2021-30293 No. 21-30293, 2022 WL 686332 (5th Cir. Mar. 8, 2022) (unpublished per curiam). In reaching its conclusion and emphasizing that non-competition provisions must strictly comply with the requirements of La. R.S. 23:921, the *Rouses* court stated:

> "Obligations of parties to a contract are fixed at the time the contract is entered into." *La. Smoked Prods., Inc. v. Savoie's Sausage & Food Prods., Inc.*, [96-1716 (La. 7/1/97), 696 So.2d 1373, 1378] (citation omitted). At the time [former employee defendant] signed the non-compete agreement, [plaintiff] was not his employer. The plain text of [La. R.S.] 23:921(C) permits non-compete agreements between

15

employees and their "employer." It does not allow for non-compete agreements between job applicants and potential employers. See *Simpson v. Kelly Servs., Inc.*, [339 So.2d 490, 495 (La. App. 2d Cir. 1976), writ denied, 341 So. 2d 1121 (La. 1977)] (statute "applies only to persons in employee-employer relationships and will not be extended to other relationships by judicial construction or interpretation")...; cf. *Setpoint Integrated Sols., Inc. v. Kitely*, [2021-322 (La. App. 3d Cir. 1/26/22), 2022 WL 225093, at *11] (finding non-compete agreement signed after employee's termination invalid because the "strict construction [required by Louisiana law] undermines any finding as to 'employee' status in this case").

Thus, the *Rouses* court concluded that the district court did not err in finding the non-compete agreement was unenforceable.

We find *Rouses*, 2022 WL 686332, at *1, factually distinguishable. First, in *Rouses*, the former employee who signed the non-competition agreement did so nearly a month before he accepted the position offered by his former employer, whereas Annison and Cates signed their agreements after they had accepted Gallagher's offer of employment. Additionally, nothing in the *Rouses* court's opinion suggests that the employment agreement the former employee signed included an express effective date on or after he commenced employment. But Annison and Cates expressly agreed with Gallagher that the effective date of their employment agreements was the date each commenced their respective employment. Therefore, on the effective date of their respective employment agreements, Gallagher was Annison's and Cates employer.

In light of the parties' express common intent to effectuate the employment agreements on the date Annison and Cates, respectively, commenced employment and because we have already concluded that, as severed, the employment agreements were enforceable as to Stafford, Duthu, Lacey, and Pecue, for the same reasons, Annison's and Cates employment agreements, as severed, are enforceable. The trial court committed an error of law in its interpretation of Annison's and Cates employment agreements, which expressly set forth the parties' common

intent that the effective date of each agreement was the day that Annison and Cates, respectively, commenced employment. Having committed legal error, we conclude that the trial court abused its discretion. Accordingly, the trial court's denial of the preliminary injunction that Gallagher requested is reversed.

We next examine whether Gallagher made a prima facie showing that Annison and Cates breached the non-competition provisions of their respective employment agreements. Like Stafford, Duthu, Lacey, and Pecue, in their testimony, Annison and Cates admitted that they have provided services to Gallagher clients after the clients had moved their business to Lockton, with each testifying that she began providing services to these former Gallagher clients only after the trial court's denial of Gallagher's request for a TRO. Since Annison and Cates acknowledged having provided services to Gallagher clients in violation of their non-competition agreements, we find that Gallagher made a prima facie showing that Annison and Cates breached their respective employment agreements and was, therefore, entitled to a preliminary injunction enforcing the employment agreements, as modified by the trial court pursuant to the severability clause. Accordingly, we render judgment enjoining Annison and Cates from violating the restrictive covenants as set forth in their respective employment agreements.

## DECREE

For these reasons, we affirm that portion of the trial court's judgment that enjoined Stafford from providing insurance or benefit services to any Gallagher client for which he provided such services while employed at Gallagher in the parishes specified in Schedule 1 of his April 9, 2012 employment agreement[11] and from using or disclosing Gallagher confidential information for a period of two

---

[11] The Schedule 1 attachment specifies the following parishes: East Baton Rouge, East Feliciana, Jefferson, Lafayette, Livingston, Orleans, Plaquemines, West Baton Rouge, and West Feliciana.

years from his November 16, 2022 departure from Gallagher.[12] We affirm that portion of the trial court's judgment that enjoined Duthu, Lacey, and Pecue for twenty-four months following their November 16, 2022 departures from Gallagher from directly or indirectly soliciting, servicing, consulting with, accepting business from, diverting, or otherwise inducing termination, cancellation, or nonrenewal of or for any Gallagher client for which they provided services while employed at Gallagher in the parishes specified in the schedule attached to each of their employment agreements[13] and from using Gallagher's confidential information.[14] We reverse that portion of the trial court's judgment which denied Gallagher's request for a preliminary injunction against Annison and Cates and render judgment enjoining Annison and Cates for twenty-four months following their November 16, 2022 departures from Gallagher from directly or indirectly soliciting, servicing, consulting with, accepting business from, diverting, or otherwise inducing termination, cancellation, or nonrenewal of or for any Gallagher client for which they provided services while employed at Gallagher in the parishes specified in the schedule attached to each of their employment

---

[12] See nn.7 & 8, supra, defining insurance services and benefits services, and noting "Gallagher clients" references accounts of Gallagher and prospective accounts of Gallagher. "Confidential information" is defined as "certain confidential and proprietary data and information … which is not known either to [Gallagher's] competitors or within the insurance agency, consulting and brokerage business generally and which has independent economic value to [Gallagher]."

[13] Schedule A, attached to Duthu's, Lacey's, and Pecue's employment agreements, sets forth the following parishes: Acadia, Allen, Ascension, Assumption, Avoyelles, Beauregard, Bossier, Caddo, Calcasieu, Cameron, East Baton Rouge, East Feliciana, Evangeline, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Lafourche, Livingston, Natchitoches, Orleans, Ouachita, Plaquemines, Pointe Coupee, Rapides, Red River, St. Bernard, St. Charles, St. Helena, St. James, St. John the Baptist, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermillion, Vernon, Washington, West Baton Rouge and West Feliciana, along with Houston and Dallas, Texas.

[14] With slight modifications not relevant to this appeal, "confidential information" is defined in Duthu's, Lacey's, and Pecue's employment agreements similarly to that in Stafford's agreement. See n.12, supra.

agreements[15] and from using Gallagher's confidential information.[16] The matter is remanded with an order that the trial court fix an amount of security to be furnished by Gallagher in accordance with Article 3610. Appeal costs are assessed one-third to Arthur J. Gallagher & Co. and two-thirds to Zachary Stafford, Wendy Duthu, Jessica Lacey, Preston Pecue, Madison Annison, and Brittany Cates.

**AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED WITH ORDER.**

---

[15] Schedule A, attached to Annison's employment agreement, sets forth all 64 of the parishes in Louisiana as well as various areas in Mississippi, Texas, Arkansas, Tennessee, and Kentucky. Schedule A, attached to Cates' employment agreement, sets forth the following parishes: Acadia, Allen, Ascension, Assumption, Avoyelles, Beauregard, Bossier, Caddo, Calcasieu, Cameron, East Baton Rouge, East Feliciana, Evangeline, Iberia, Iberville, Jefferson Davis, Jefferson, Lafayette, Livingston, Natchitoches, Orleans, Ouachita, Plaquemines, Pointe Coupee, Rapides, Red River, St. Bernard, St. Charles, St. Helena, St. James, St. John the Baptist, St. Landry, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermillion, Vernon, Washington, West Baton Rouge and West Feliciana.

[16] With slight modifications not relevant to this appeal, "confidential information" is defined in Annison's and Lacey's employment agreements similarly to that in Stafford's. See n.12, supra.

19

ARTHUR J. GALLAHER & CO.

VERSUS

MADISON ANNISON, BRITTANY CATES, WENDY DUTHU, JESSICA RATELLE LACEY, PRESTON PECUE, ZACH STAFFORD, AND LOCKTON-DUNNING SERIES OF LOCKTON COMPANIES, LLC

**GUIDRY, C.J., dissents in part and assigns reasons.**

**GUIDRY, C.J., dissenting in part.**

I disagree with the portion of the majority opinion that reverses the trial court's ruling with respect to the enforceability of the non-compete clauses in the employment agreements for Madison Annison and Brittany Cates to find the clauses enforceable.

The governing law is La. R.S. 23:921, where in paragraph C, the statute states, in relevant part, "[a]ny person ... may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer." Noting that "[t]he statute is clear and unambiguous in its reference only to the *employer,* the *employee* and the *contract of employment,*" this court has previously held that "R.S. 23:921 applies only to persons in employee-employer relationships and will not be extended to other relationships by judicial construction or interpretation." Hawthorn, Waymouth & Carroll v. Johnson, 611 So. 2d 645, 654 (La. App. 1st Cir. 1992) (quoting Simpson v. Kelly Services, Inc., 339 So. 2d 490, 494 (La. App. 2d Cir. 1976), writ denied, 341 So. 2d 1121 (La.1977)).

1

All agree that Annison and Cates were not employees at the time they signed their respective employment agreements, yet the majority holds that they could nonetheless enter into a non-compete agreement to be effective on a future date. Notably, the majority cites no authority for so holding. As I believe Annison and Cates, prior to their employment, lacked the capacity and authority to enter into non-compete agreement, no matter when the agreement is made effective, I respectfully dissent.